Colin H. Murray
*(Admitted Pro Hac Vice)*
  colin.murray@bakermckenzie.com
David R. Callaway
*(Admitted Pro Hac Vice)*
  david.callaway@bakermckenzie.com
Anne M. Kelts
*(Admitted Pro Hac Vice)*
  anne.kelts@bakermckenzie.com
**BAKER & McKENZIE LLP**
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone:     +1 415 576 3000
Facsimile:     +1 415 576 3099

Mark L. Karasik
*(Admitted Pro Hac Vice)*
  mark.karasik@bakermckenzie.com
James J. Dries
*(Admitted Pro Hac Vice)*
  james.dries@bakermckenzie.com
Laura Kelly
*(Admitted Pro Hac Vice)*
  laura.kelly@bakermckenzie.com
**BAKER & McKENZIE LLP**
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone:     +1 312 861 8000
Facsimile:     +1 312 861 2899

Seth P. McGinnity (AZ Bar No. 030343)
  seth@mcginnitylaw.com
**McGINNITY LAW, PLC**
2425 East Camelback Road, Suite 880
Phoenix, AZ 85016
Telephone:     +1 480 659 8818
Facsimile:     +1 480 659 8223

*Attorneys For Plaintiff-Dr. Kingsley*

Jennifer Semko
*(Admitted Pro Hac Vice)*
  jennifer.semko@bakermckenzie.com
**BAKER & McKENZIE LLP**
815 Connecticut Avenue, N.W.
Washington, D.C.  20006
Telephone:     +1 202 452 7000 i
Facsimile:     +1 202 452 7074

Thomas M. Connelly (AZ Bar No. 012987)
  Tconnelly2425@aol.com
**LAW OFFICES OF THOMAS M. CONNELLY**
2425 East Camelback Road, Suite 880
Phoenix, AZ  85016
Telephone:     +1 602 957 1993
Facsimile:     +1 602 957 2137

Thomas J. Marlowe (AZ Bar No. 016640)
  tmarlowe2425@outlook.com
**LAW OFFICES OF THOMAS J. MARLOWE**
2425 East Camelback Road, Suite 880
Phoenix, AZ  85016
Telephone:     +1 602 957 1995
Facsimile:     +1 602 957 2137

SEALED

✓ FILED        LODGED
  RECEIVED      COPY

JUN 1 2 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT - DISTRICT OF ARIZONA

UNITED STATES OF AMERICA, ex rel.,
BRUCE P. KINGSLEY, M.D.,

    Plaintiff-Relator,

    v.

DIGNITY HEALTH, d/b/a ST. JOSEPH'S
HOSPITAL AND MEDICAL CENTER, and
d/b/a BARROW NEUROLOGICAL
INSTITUTE; NEUROSURGICAL
ASSOCIATES, LTD, d/b/a BARROW
NEUROSURGICAL ASSOCIATES LTD;

FILED UNDER SEAL PURSUANT TO 31
U.S.C. § 3730(b)(2) AND LOCAL CIVIL
RULE 5.7

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**No. CV-17-00692-PHX-JZB**

**FILED UNDER SEAL**

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

1    ROBERT F. SPETZLER, M.D., and JANE
     DOE SPETZLER; ANDREW S. LITTLE, M.D.
2    and JANE DOE LITTLE; RANDALL
     PORTER, M.D., and JANE DOE PORTER;
3    NICHOLAS THEODORE, M.D., and JANE
     DOE THEODORE; F. DAVID BARRANCO,
4    M.D., and JANE DOE BARRANCO; UDAYA
     K. KAKARLA, M.D., and JANE DOE
5    KAKARLA; NADER SANAI, M.D., and JANE
     DOE SANAI; PETER NAKAJI, M.D., and
6    JANE DOE NAKAJI; KRIS SMITH, M.D., and
     JANE DOE SMITH; TARO KAIBARA, M.D.,
7    and JANE DOE KAIBARA; STEVEN
     CHANG, M.D., and JANE DOE CHANG;
8    ANDREW SHETTER, M.D., and JANE DOE
     SHETTER; FELIPE ALBUQUERQUE, M.D.,
9    and JANE DOE ALBUQUERQUE;
     CAMERON McDOUGALL, M.D., and JANE
10   DOE McDOUGALL; and CURTIS
     DICKMAN, M.D., and JANE DOE
11   DICKMAN;

12         Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................ 1

II.  JURISDICTION AND VENUE ................................................................................. 5

III. THE PARTIES .......................................................................................................... 5

IV.  APPLICABLE LAWS AND REGULATIONS ......................................................... 8

    A.   MEDICARE ...................................................................................................... 8

        (i)    Medicare Conditions Of Participation: Generally ............................ 13

        (ii)   Condition of Participation: Informed Consent ................................. 13

        (iii)  Conditions of Participation: Standards of Care ................................ 14

        (iv)   Medicare Payments for Graduate Medical Education ...................... 15

    B.   MEDICAID ..................................................................................................... 17

    C.   THE FALSE CLAIMS ACT ("FCA") ......................................................... 19

V.   BACKGROUND ..................................................................................................... 20

    A.   Overview ......................................................................................................... 20

    B.   Dignity Health's Troubled History ................................................................ 22

    C.   Dr. Kingsley's Knowledge of the Fraud ....................................................... 24

VI.  THE DEFENDANTS' WRONGFUL CONDUCT .................................................. 26

    A.   Two Concurrent Surgeries ............................................................................. 26

    B.   Three or More Concurrent Surgeries ............................................................. 33

    C.   Angiographies ................................................................................................ 36

    D.   Informed Consent ........................................................................................... 38

    E.   SJHMC's and BNA's False Certification of Compliance ............................. 41

    F.   GME Payments ............................................................................................... 44

    G.   Materiality ...................................................................................................... 47

VII. REPRESENTATIVE EXAMPLES OF THE FRAUDULENT BILLING SCHEME ........... 53

    A.   Representative Examples of the Fraud Involving Three or More Concurrent
        Surgeries ......................................................................................................... 53

        (i)    Examples of Dr. Spetzler's Role in the Fraud (Triple Concurrencies) ........... 54

i

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

  (ii)  Examples of Dr. Little's Role in the Fraud (Triple Concurrencies)..............57

  (iii)  Examples of Dr. Porter's Role in the Fraud (Triple Concurrencies)............60

  (iv)  Examples of Dr. Theodore's Role in the Fraud (Triple Concurrencies).......63

  (v)  Examples of Dr. Theodore's Additional Role in the Fraud (Triple Concurrencies)................................................66

  (vi)  Examples of Dr. Barranco's Role in the Fraud (Triple Concurrencies)........69

  (vii)  Examples of Dr. Kakarla's Role in the Fraud (Triple Concurrencies)..........72

  (viii)  Examples of Dr. Sanai's Role in the Fraud (Triple Concurrencies)..............75

  (ix)  Examples of Dr. Nakaji's Role in the Fraud (Triple Concurrencies)............78

  (x)  Examples of Dr. Smith's Role in the Fraud (Quadruple Concurrencies)......81

  (xi)  Examples of Dr. Kaibara's Role in the Fraud (Triple Concurrencies)..........84

  (xii)  Examples of Dr. Chang's Role in the Fraud (Triple Concurrencies.............87

 B.  Representative Examples of the Fraud Involving Two Concurrent Surgeries..........90

  (i)  Examples of Dr. Chang's Role in the Fraud (Double Concurrencies)..........91

  (ii)  Examples of Dr. Kakarla's Role in the Fraud (Double Concurrencies).......94

  (iii)  Examples of Dr. Smith's Role in the Fraud (Double Concurrencies)...........96

  (iv)  Examples of Dr. Little's Role in the Fraud (Double Concurrencies)............99

  (v)  Examples of Dr. Shetter's Role in the Fraud (Double Concurrencies).......102

  (vi)  Examples of Dr. Theodore's Role in the Fraud (Double Concurrencies)....105

  (vii)  Examples of Dr. Porter's Role in the Fraud (Double Concurrencies).........107

  (viii)  Examples of Dr. Barranco's Role in the Fraud (Double Concurrencies)....110

  (ix)  Examples of Dr. Kaibara's Role in the Fraud (Double Concurrencies)......112

  (x)  Examples of Dr. Nakaji's Role in the Fraud (Double Concurrencies)........115

  (xi)  Examples of Dr. Spetzler's Role in the Fraud (Double Concurrencies)......118

  (xii)  Examples of Dr. Dickman's Role in the Fraud (Double Concurrencies)....121

 C.  Representative Examples of the Fraud Involving Failure of Teaching Physician to be Physically Present During Angiographies ....................................123

  (i)  Examples of Dr. Albuquerque's Role in the Fraud (Angiographies)..........124

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

       (ii)     Examples of Dr. Albuquerque's Additional Role in the Fraud (Angiographies) ...................................................................... 125

       (iii)    Examples of Dr. McDougall's Role in the Fraud (Angiographies) ............. 127

       (iv)    Examples of Dr. McDougall's Additional Role in the Fraud (Angiographies) ...................................................................... 128

VIII.   PERVASIVENESS AND CONSEQUENCES OF THE FRAUDULENT SCHEME ........ 130

IX.    CAUSES OF ACTION ................................................................ 130

      COUNT I  (Federal False Claims Act – Presentation Of False Claims – 31 U.S.C. § 3729(A)(1)(A) – Against All Defendants ........................ 130

      COUNT II  (Federal False Claims Act – Making or Using False Record or Statement to Cause Claim to Be Paid - 31 U.S.C. § 3729(a)(1)(B) – Against All Defendants ........... 134

      COUNT III  (Conspiracy to Violate Federal False Claims Act – - 31 U.S.C. § 3729(a)(1)(C) – Against All Defendants ........................ 135

AD DAMNUM ............................................................................ 138

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

# FIRST AMENDED COMPLAINT

Plaintiff-Relator Bruce P. Kingsley, M.D. ("Relator" or "Dr. Kingsley"), by his attorneys, and on behalf of the United States of America, alleges:

## I.    INTRODUCTION

1.    Relator brings this action on behalf of the United States of America for treble damages and civil penalties arising from Defendants' systematic and continued violations of the Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.*

2.    For many years, neurosurgeons and staff at the world-renowned Barrow Neurological Institute ("BNI") at St. Joseph's Hospital and Medical Center ("SJHMC" or the "Hospital") in Phoenix, Arizona, have engaged in a fraudulent billing conspiracy that has resulted in the unlawful payment of millions of dollars annually under various government health care programs, including but not limited to, programs administered by the Centers for Medicare and Medicaid Services ("CMS"), a branch of the Department of Health and Human Services ("HHS"). The scheme bears the hallmarks of a surgical "bait-and-switch." Patients are drawn to BNI by the reputation and experience of its neurosurgeons. Patients provide written consent to undergo complex and high-risk procedures believing their procedure will be performed and supervised by a specific reputable and experienced surgeon, only then to have their procedure substantially performed by young and inexperienced resident surgeons-in-training outside the presence of the very surgeons who fraudulently obtained the patients' consent to perform their procedures. This scheme is visited upon multiple anesthetized unconscious BNI patients simultaneously, thereby allowing a single "teaching" neurosurgeon to claim responsibility for multiple surgeries occurring at the same time. The scheme is completed by then billing, *inter alia*, federally funded healthcare programs for teaching surgeries and associated hospital admissions in violation of multiple CMS rules, conditions of participation

1

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

and conditions of payment in federal health care programs, as well as state Medicaid fraud reporting statutes in contravention of certifications of compliance.

3.      The fraudulent practices were carried out by teaching neurosurgeons and hospital staff, including nurses and residents, who, among other deceptive practices, improperly obtained patient consent to surgical procedures through one or more forms that concealed and misrepresented the true role of both the teaching surgeon and surgical residents who participated in the surgery in violation of government regulations and rules established for patient safety, scheduled and conducted simultaneous surgeries in a manner that violated government teaching surgery rules and regulations, willfully omitted to properly document procedures billed to government programs, and falsified records to create the appearance that surgeries performed by residents in violation of government regulations were actually properly performed solely by teaching surgeons. Defendants then exacerbated their fraud by submitting claims for payment on government-required forms in which they falsely represented that the information included in the claim form was "true, accurate and complete" and that their claims qualified for government payment.

4.      The fraudulent billing practices described in this First Amended Complaint have a long history, and some of those practices continue today, while certain other fraudulent practices were halted after the Federal Government issued a subpoena, based on allegations first brought to the Government's attention by Dr. Kingsley, investigating Defendants' billing practices.

5.      To assure payment under government programs, including, without limitation, Medicare, Medicaid, Civilian Health and Medical Program of the Uniformed Services ("TRICARE"), the Federal Employees' Compensation Act ("FECA"), the Black Lung benefits program ("Black Lung"), the Indian Health Service, and the Veterans' Administration Fee Service Program ("VA Fee Service") (collectively, "Federal Health Care Programs"), Defendants routinely, knowingly, and fraudulently violated government rules and regulations, including CMS rules and

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

regulations codified in the Code of Federal Regulations ("C.F.R.") and referred to in this First Amended Complaint, by:

(a)    Permitting concurrent teaching surgeries conducted by residents with little or no guidance or oversight from a teaching surgeon during portions that required either the presence of the teaching surgeon or the presence of a qualified backup surgeon;

(b)    Billing two concurrent surgeries that supposedly were performed by the same teaching surgeon, as though each surgery had been performed as a single, separate procedure, when in fact major portions of one, and sometimes both surgeries were performed by an unsupervised resident;

(c)    Falsifying operating room and surgical records to make each of multiple concurrent surgeries appear that it was being conducted in a non-concurrent fashion, thereby making the practice resistant to detection through normal auditing methods;

(d)    Billing two concurrent surgeries for which payment is legally barred because the teaching surgeon failed to arrange for a backup surgeon or failed to document the arrangement for a backup surgeon;

(e)    Routinely failing to personally disclose and truthfully document the teaching surgeon's presence in the operating room;

(f)    Billing for three (and sometimes more) concurrent surgeries supervised by a single teaching surgeon for which payment is barred in all cases;

(g)    Permitting unsupervised residents to perform angiographies of the brain and not requiring the personal presence of the teaching physician throughout the procedure;

(h)    Requiring unsuspecting patients to improperly execute surgical consent and other forms that (i) minimized the role of the resident, (ii) created the impression that the teaching surgeon would conduct the entire procedure with limited assistance from residents who would

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

3

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(i)      work "under the guidance and/or supervision of" the teaching surgeon, (iii) failed to inform the patient that portions of the surgery would be performed solely by unsupervised residents, (iv) failed to inform the patient that the teaching surgeon would not be physically present in the operating room for some or all of the surgical tasks performed by residents, (v) failed to inform the patient that the same teaching surgeon would be involved in other – at times as many as four – simultaneous surgeries in separate operating rooms, (vi) failed to disclose that no actual backup surgeon had been designated as required by government rules and regulations governing reimbursement for teaching surgeries, and (vii) failed to disclose that Dignity Health, through its nurses, residents, operating room managers, and schedulers, was making multiple operating rooms available to the same surgeon at precisely the same time;

(j)      Falsely representing that claims submitted to government agencies were eligible for payment under one or more government programs;

(k)      Falsely representing that all information included in claims for payment was "true, accurate and complete";

(l)      Falsely representing compliance with all laws and regulations regarding the provision of the health care services in a teaching hospital in order to receive Graduate Medical Education ("GME") payments;   and

(m)      Submitting claims for payment under government programs without disclosing violations of government rules and regulations governing payments.

6.      Defendants' misrepresentations and false certifications of compliance with government healthcare program instructions, rules, regulations, and conditions as described above and identified in detail elsewhere in this First Amended Complaint, were material to the Government's decision to pay claims submitted by Defendants. But for those misrepresentations and

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

4

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

false certifications, the Government would not have paid the claims submitted by Defendants, as those claims are more particularly described in this First Amended Complaint.

## II.    JURISDICTION AND VENUE

7.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

8.    There has been no public disclosure of the specific allegations or transactions contained herein that bars jurisdiction under 31 U.S.C. § 3730(e).

9.    The Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because all Defendants can be found, reside, or transacted business during the relevant period in the District of Arizona, and much, if not all, of the wrongful conduct described herein occurred in Arizona.

10.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because most of the Defendants can be found, reside, or transact business in the District of Arizona and violations of 31 U.S.C. § 3729 occurred in this District.

## III.    THE PARTIES

11.    During all relevant times, Dr. Kingsley was a practicing board-certified, fellowship-trained medical practitioner in Phoenix, Arizona. Dr. Kingsley has been an active member of the general medical staff of SJHMC for many years. As a physician on the staff of SJHMC, Dr. Kingsley has personal knowledge of the fraudulent practices described in this Complaint, which have occurred and continue to occur even now, through direct personal observation and review of medical records.

12.    Defendant Dignity Health ("Dignity Health") is a California non-profit corporation, headquartered in San Francisco. Dignity Health operates one of the largest healthcare systems in the United States and does business under the names of hospitals that it owns and operates, as well as

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

5

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

department names within those hospitals. SJHMC and BNI are both trade names of Dignity Health and are not independent legal entities. As such, Dignity Health is liable for all wrongful acts and omissions described in this First Amended Complaint attributed to either SJHMC or BNI. Any reference in this First Amended Complaint to SJHMC or BNI includes Dignity Health and any reference to Dignity Health includes SJHMC and BNI, unless the context clearly indicates otherwise.

13.    SJHMC is a teaching hospital[1] located at 350 W. Thomas Road, Phoenix AZ 85013. BNI is a department of SJHMC dedicated to neurosurgical training, research, and patient care. BNI is located on the campus of SJHMC. As a teaching hospital, SJHMC provides training and graduate medical education to residents under the supervision of attending physicians.

14.    Defendant Neurosurgical Associates, LTD, is an Arizona professional corporation that does business under the name Barrow Neurosurgical Associates LTD ("BNA"). BNA is located at 2910 N. 3rd Avenue, Phoenix AZ 85013, on the campus of SJHMC. At all relevant times, BNA was owned by or employed the doctors named as Defendants (hereinafter referred to collectively as the "Defendant Doctors"). BNA physicians direct SJHMC's Neurosurgery Residency Program.

15.    Defendant Robert F. Spetzler, M.D. ("Dr. Spetzler"), is a resident of Arizona and is employed by BNA, or was so employed for extensive periods during which the wrongful conduct alleged in this First Amended Complaint took place, specifically including the entire period during which the wrongful conduct attributed to Dr. Spetzler occurred.

16.    Defendant Andrew S. Little, M.D. ("Dr. Little"), is a resident of Arizona and is employed by Defendant BNA.

17.    Defendant Randall Porter, M.D. ("Dr. Porter"), is a resident of Arizona and is employed by Defendant BNA.

---

[1] Defined as "a hospital engaged in an approved GME [Graduate Medical Education] residency program in medicine, osteopathy, dentistry, or podiatry." 42 C.F.R. § 415.152.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

6

**18.**     Defendant Nicholas Theodore, M.D. ("Dr. Theodore"), is currently a resident of Maryland. For extensive periods of time during which the wrongful conduct alleged in this First Amended Complaint took place, specifically including the entire period during which the wrongful conduct attributed to Dr. Theodore occurred, Dr. Theodore was a resident of Arizona and was employed by Defendant BNA.

**19.**     Defendant F. David Barranco, M.D. ("Dr. Barranco"), is a resident of Arizona and is employed by Defendant BNA.

**20.**     Defendant Udaya K. Kakarla, M.D. ("Dr. Kakarla"), is a resident of Arizona and is employed by Defendant BNA.

**21.**     Defendant Nader Sanai, M.D. ("Dr. Sanai"), is a resident of Arizona and is employed by Defendant BNA.

**22.**     Defendant Peter Nakaji, M.D. ("Dr. Nakaji"), is a resident of Arizona and is employed by Defendant BNA.

**23.**     Defendant Kris Smith, M.D. ("Dr. Smith"), is a resident of Arizona and is employed by Defendant BNA.

**24.**     Defendant Taro Kaibara, M.D. ("Dr. Kaibara"), is a resident of Arizona and is employed by Defendant BNA.

**25.**     Defendant Steven Chang, M.D. ("Dr. Chang"), is a resident of Arizona and is employed by Defendant BNA.

**26.**     Defendant Andrew Shetter, M.D. ("Dr. Shetter"), is a resident of Arizona and is employed by Defendant BNA.

**27.**     Defendant Felipe Albuquerque, M.D. ("Dr. Albuquerque"), is a resident of Arizona and is employed by Defendant BNA.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

28.     Defendant Cameron McDougall, M.D., ("Dr. McDougall"), is currently a resident of the state of Washington.  For extensive periods of time during which the wrongful conduct alleged in this First Amended Complaint took place, specifically including the entire period during which the wrongful conduct attributed to Dr. McDougall occurred, Dr. McDougal was a resident of Arizona and was employed by Defendant BNA.

29.     Defendant Curtis Dickman, M.D., is a resident of Arizona and is employed by Defendant BNA.

30.     All Defendant Doctors involved SJHMC "residents" in the care of their patients, and, therefore, were deemed "teaching physicians" for purposes of government healthcare programs.

31.     At all relevant times, the Doctor Defendants were residents of the State of Arizona and this judicial district and, on information and belief, are each married to the Jane Doe defendant named herein with their surname, who on information and belief were at all relevant times also residents of Arizona and this judicial district. Each Jane Doe defendant is named herein to join the marital community between a Doctor Defendant and the Jane Doe defendant with the Doctor Defendant's surname. The true names of the Jane Doe defendants will be substituted after they are confirmed. In addition to acting on his own behalf, each Doctor Defendant was acting for and on behalf of his marital community with the Jane Doe defendant with his surname to benefit said community relative to the acts and omissions alleged herein, such that the marital community is liable for the relief sought herein based on the Doctor Defendant's misconduct.

## IV.     APPLICABLE LAWS AND REGULATIONS

### A.     MEDICARE

32.     Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, established the Health Insurance for the Aged and Disabled Program, commonly known as the Medicare program (the "Program" or "Medicare"). The Secretary of the United States Department of Health and

8

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Human Services administers the Program through CMS. Part A of the Program provides basic insurance for the costs of hospitalizations and post hospitalization care. 42 U.S.C. §§ 1395c, 1395i-2. Part B of the Program is a federally subsidized, voluntary insurance program that covers certain non-hospital medical services and products including the treatments at issue in this First Amended Complaint. 42 U.S.C. §§ 1395k, 13951, 1395s. Part C of the Program, also termed Medicare Advantage, provides Medicare-approved private health insurance plans for individuals enrolled in Medicare Parts A and B, and may offer additional benefits or prescription drug coverage. 42 U.S.C. § 1395w-21. Part C plans follow the Medicare billing rules and may not offer a lessor level of service than Original Medicare.

33.    Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, contracts with private insurance carriers to administer and pay Medicare Part B claims, and Part C claims indirectly, from the Medicare Trust Fund. 42 U.S.C. § 1395u. In this capacity, the insurance carriers act on behalf of CMS. 42 C.F.R. § 421.5(b). Medicare only pays for services furnished to Medicare beneficiaries that are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). Medicare billing and payment for both doctors and the hospital is regulated through the Medicare Claims Processing Manual ("MCPM"), promulgated by CMS. Chapter 12 of the MCPM includes regulations regarding reimbursement of Teaching Physicians for services performed involving Residents. These regulations strictly govern the manner in which Teaching Physicians and Residents must provide services to patients and how doctors and hospitals must submit claims in order to bill services to Federal Healthcare Programs, specifically including, without limitation, Medicare and Medicaid.  Chapter 25 of the MCPM dictates how Hospital claims must be submitted and what certifications must accompany those submissions.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

34.    To be eligible to receive payment for services rendered to Medicare patients, service providers and suppliers, including hospitals, clinics, and physicians, agree "to abide by the Medicare laws, regulations and program instructions that apply" to the person or entity. Payment of a Medicare claim "is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare." CMS-855A; *see also* CMS-855B, and CMS-855I. In the process of enrolling in the Medicare program, providers and suppliers promise that they "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and . . . will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." *Id.*

35.    Medicare payment for services of teaching physicians requires strict adherence to government rules and regulations. In a teaching setting,[2] to be eligible for Medicare payment, the services must either be furnished by a physician who is not a resident or by a resident in the presence of a fully-licensed, teaching physician. 42 C.F.R. § 415.170. When services are provided by a resident in the presence of a teaching physician, payment to the teaching physician is permitted only if the "teaching physician is present during the key portion of any service or procedure for which payment is sought." 42 C.F.R. § 415.172(a). The standard for payment is even more rigorous in the case of "surgical, high-risk, or other complex procedures." In those cases, the teaching physician must be present not only during all critical portions of the procedure, but also must be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a)(1) (emphasis added).

---

[2] All complained of conduct arose in a "teaching setting," defined as "any provider, hospital-based provider, or non-provider settings in which Medicare payment for the services of residents is made under the direct GME payment provisions of 413.75 through 413.83, or on a reasonable-cost basis under the provisions of 409.26 or 409.40 for resident services furnished in skilled nursing facilities or home health agencies, respectively." § 42 C.F.R. 415.152.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

36.    In order to bill Medicare for patient care in a teaching setting, "the medical records must document the teaching physician was present <u>at the time</u> the service is furnished." 42 C.F.R. § 415.172(b) (emphasis added).

37.    Providers and suppliers seeking Medicare payments must submit their claims on government-prescribed forms. 42 C.F.R. § 424.32 ("A claim must be filed with the appropriate intermediary or carrier on a form prescribed by CMS in accordance with CMS instructions"). In addition, when making a claim for government payment, providers and suppliers must provide "sufficient information to determine whether payment is due and the amount of payment." 42 C.F.R. § 424.5.

38.    Pursuant to 42 C.F.R. § 424.32, Form CMS-1450 must be used by an "institutional provider billing for Medicare inpatient, outpatient and home health services." 42 C.F.R. § 424.32(b). Form CMS-1500 is to be used by "physicians and other suppliers to request payment for medical services." *Id*. Each form is replete with representations concerning the truthfulness of the information submitted by the supplier and warns of the consequences of submitting false information. Both forms require the institutional provider (Form 1450) or physician (Form 1500) to certify that the information contained in the claim is "true, accurate and complete."

39.    The MCPM supplements and implements relevant C.F.R. regulations regarding payment for surgery in a teaching setting and sets forth the conditions under which a teaching surgeon may conduct one teaching surgery, or two overlapping teaching surgeries simultaneously, and still properly bill for teaching surgeries and associated hospital services. The MCPM proscribes payment for physician services in the case of three concurrent surgeries.

40.    In relevant part, the MCPM provides:

(a)    "In order to bill for surgical, high-risk, or other complex procedures, the teaching physician must be present during all critical and key portions of the procedure and be

11

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

immediately available to furnish services during the entire procedure." MCPM, Ch. 12 § 100.1.2.

(b)    "During non-critical or non-key portions of the surgery, if the teaching surgeon is not physically present, he/she must be immediately available to return to the procedure, i.e., he/she cannot be performing another procedure. If circumstances prevent a teaching physician from being immediately available, then he/she must arrange for another qualified surgeon to be immediately available to assist with the procedure, if needed." MCPM, Ch. 12 § 100.1.2(A).

(c)    "Single Surgery. When the teaching surgeon is present for the entire surgery, his or her presence may be demonstrated by notes in the medical records made by the physician, resident, or operating room nurse. For purposes of this teaching physician policy, there is no required information that the teaching surgeon must enter into the medical records." MCPM, Ch. 12 § 100.1.2(A)(1).

(d)    "Two Overlapping Surgeries. In order to bill Medicare for two overlapping surgeries, the teaching surgeon must be present during the critical or key portions of both operations. Therefore, the critical or key portions may not take place at the same time. When all of the key portions of the initial procedure have been completed, the teaching surgeon may begin to become involved in a second procedure. The teaching surgeon must personally document in the medical record that he/she was physically present during the critical or key portion(s) of both procedures. When a teaching physician is not present during non-critical or non-key portions of the procedure and is participating in another surgical procedure, he/she must arrange for another qualified surgeon to immediately assist the resident in the other case should the need arise. In the case of three concurrent surgical procedures, the role of the teaching surgeon (but not the anesthesiologist) in each of the cases is classified as a supervisory service to the hospital rather than a physician service to an individual patient and is not payable under the physician fee schedule." MCPM, Ch. 12 § 100.1.2(A)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

12

(e)    "In the case of complex or high-risk procedures for which national Medicare policy, local policy, or the CPT description indicate that the procedure requires personal (in person) supervision of its performance by a physician, pay for the physician services associated with the procedure only when the teaching physician is present with the resident. The presence of the resident alone would not establish a basis for fee schedule payment for such services. These procedures include interventional radiologic and cardiologic supervision and interpretation codes, cardiac catheterization, cardiovascular stress tests, and trans-esophageal echocardiography." MCPM, Ch. 12 § 100.1.5.

     (i)    **Medicare Conditions Of Participation: Generally**

    **41.**    To participate in the Medicare and Medicaid programs, hospitals must comply with the Medicare Conditions of Participation ("CoPs"), found at 42 C.F.R. Part 482. Hospitals are required to comply with each condition of Part 482 "in order to receive Medicare/Medicaid payment." CMS State Operations Manual - Appendix A (Rev. 151, 11-20-15).

     (ii)    **Condition of Participation: Informed Consent**

    **42.**    The regulatory scheme included in the CoPs and the CMS Interpretive Guidelines (the "Guidelines") recognizes the great importance that CMS places on a patient's right to be fully informed regarding the treatment the patient will receive. To that end, on the subject of informed consent, the CoP provides:

    (a)    "The patient or his or her representative (as allowed under State law) has the right to make informed decisions regarding his or her care. The patient's rights include being informed of his or her health status, being involved in care planning and treatment, and being able to request or refuse treatment...." 42 C.F.R. § 482.13(b)(2).

    (b)    "All records must document the following, as appropriate... (v) Properly executed informed consent forms for procedures and treatments specified by the medical staff, or

13

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

1    by Federal or State law if applicable, to require written patient consent." 42 C.F.R. §

2    482.24(c)(4)(v).

3           (c)    "A properly executed informed consent form for the operation must be in

4    the patient's chart before surgery, except in emergencies." 42 C.F.R. § 482.51(b)(2).

5

6    **43.**    The Guidelines interpreting Medicare CoPs for hospitals stress that regulations

7    relating to informed consent are intended to assure that the patient receives sufficient information to

8    make an informed decision about whether to proceed with the treatment:

9           (a)    "Hospitals must utilize an informed consent process that assures patients or

10   their representatives are given the information and disclosures needed to make an informed

11   decision about whether to consent to a procedure, intervention, or type of care that requires

12   consent." CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.13(b)(2).

13

14          (b)    "Hospitals must also establish policies and procedures that assure a patient's

15   right to request or refuse treatment." *Id.*

16          (c)    "The primary purpose of the informed consent process for surgical services

17   is to ensure that the patient, or the patient's representative, is provided information necessary to

18   enable him/her to evaluate a proposed surgery before agreeing to the surgery." CMS State

19   Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2).

20

21   **44.**    Submission of the Hospital's claims to federal healthcare programs in the

22   circumstances described in this First Amended Complaint falsely certified compliance with CoPs

23   relating to informed consent, causing the claims to be false.

24          (iii)    **Conditions of Participation: Standards of Care**

25   **45.**    The regulatory scheme included in the CoPs also imposes the following additional

26   requirements:

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(a)    Hospital surgical services, such as neurosurgery, must "be provided in accordance with acceptable standards of practice." 42 C.F.R. § 482.51.

(b)    The hospital must protect patients' rights such as "the right to receive care in a safe setting." 42 C.F.R. § 482.13(c)(2).

46.    Submission of the Hospital's claims to federal healthcare programs in the circumstances described in this First Amended Complaint, including, but not limited to, failing to obtain the patients' properly informed and executed consent, constituted false certifications that surgeries were provided in accordance with acceptable standards and in a safe setting, causing those claims to be false.

(iv)    **Medicare Payments for Graduate Medical Education.**

47.    Teaching hospitals incur significant costs in training residents that are not typically associated with the cost of patient care. In recognition of this fact, the Medicare program from its inception in 1965 has addressed the need to subsidize the cost of resident training through Graduate Medical Education ("GME") payments.

48.    GME payments defray the cost of residency programs at certified teaching hospitals through two forms of payments: Direct Graduate Medical Education payments ("DGME") and Indirect Medical Education payments ("IME").

49.    DGME payments cover a portion of the cost directly relating to the training of residents, such as salaries and benefits. The methodology for determining DGME payments is established at Section 1886(h) of the Social Security Act and implemented in 42 C.F.R §§ 413.75 through 413.83.

50.    IME payments, authorized by Section 1886(d)(5)(B) of the Social Security Act, and implemented in 42 CFR 412.105, are intended to account for the higher indirect patient care costs of teaching hospitals compared to nonteaching hospitals, "such as severity of illness of patients

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

requiring the specialized services and treatment programs provided by teaching institutions and the additional costs associated with the teaching of residents." Senate Finance Committee Report, No. 98-23, March 11, 1983).

51.     To be eligible to receive GME payments, a hospital must have an approved GME program, defined as "A residency program approved by the Accreditation Council for Graduate Medical Education, by the American Osteopathic Association, by the Commission on Dental Accreditation of the American Dental Association, or by the Council on Podiatric Medical Education of the American Podiatric Medical Association." 42 C.F.R. § 415.152. The accrediting authority for SJHMC's residency program, including the Hospital's neurosurgery residency program, is the Accreditation Council for Graduate Medical Education ("ACGME").

52.     Teaching hospitals must apply for GME funding through a government-prescribed form known as the Medicare Cost Report ("MCR"). 42 USC 1395g; 42 CFR 413.20(b). The MCR is an annual report that includes a hospital's total expenses to provide services and Medicare allowable expenses. Each annual report includes the hospitals interim requests for reimbursement, including those submitted on Form 1450 (discussed below).  Medicare GME funding is based on truthful representations made by the teaching hospital in the MCR. The Secretary of HHS can make no payment in the absence of all information required by the MCR. 42 USC 1395g.

53.     The MCR expressly requires the submitting officer to certify the provider's compliance with health care laws and regulations: "I am familiar with the laws and regulations regarding the provision of the health care services, and the services identified in this cost report were provided in compliance with such laws and regulations" (emphasis added). Truthful compliance with this certification is a condition of receiving and retaining Medicare payment.

54.     The MCR form sets forth the consequences of submitting false information: "MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW." In addition, the MCR form provides that "Failure to report can result in all interim payments made since the beginning of the cost reporting period being deemed overpayments (42 USC 1395g)."

55.    SJHMC's residency programs were funded in large measure by Medicare GME payments, pursuant to MCRs submitted by SJHMC, during the entire period in which the events described in this First Amended Complaint occurred.

56.    Upon information and belief, Defendants also submitted false claims seeking reimbursement from other government programs including TRICARE, FECA, Black Lung, Indian Health Service, and VA Fee Service, each of which also required Defendants to comply with the above rules and regulations for those claims and for which Defendants equally ignored those obligations.

**B.    MEDICAID**

57.    Medicaid is a federal health insurance system that is administered by the states and is available to low-income individuals and families who meet eligibility requirements determined by federal and state law. Medicaid pays for items and services pursuant to plans developed by the states and approved by HHS through CMS. 42 U.S.C. §§ 1396a(a)-(b). States pay health care providers according to established rates, and the Federal Government then pays states with approved plans an established share determined in accordance with 42 U.S.C. § 1396b(a).

58.    At all times relevant hereto, the United States has provided funds to Arizona for its Medicaid program, which Arizona administers through the Arizona Health Care Cost Containment System ("AHCCCS"), and HHS, through CMS, has ensured that Arizona has complied with minimum federal standards in its administration of the Medicaid program.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

17

**59.** The AHCCCS Fee-for-Service Provider Manual (hereafter the "AFFSPM") is the Arizona Medicaid equivalent of the MCPM. As a general policy, the AFFSPM states:

> Claims must meet AHCCCS requirements for claims submission. In the absence of specific policies, AHCCCS endeavors to follow Medicare policy guidelines as closely as possible.

*See* AFFSPM, Ch. 4, ¶ 2.

**60.** The AFFSPM includes regulations that govern Medicaid claims submitted by teaching hospitals and teaching physicians. In relevant part, those regulations provide:

> A hospital may not submit a claim for professional services rendered unsupervised by a resident or intern using the hospital's provider ID, the attending / teaching physician's provider ID, or the chief of staff's provider ID number.
>
> Patient services rendered by the attending / teaching physician solely in the capacity of teaching are excluded from reimbursement.
>
> The attending / teaching physician may submit a claim for professional services if:
>
> . . .
>
> 2. For surgery or dangerous / complex procedures, the attending / teaching physician is present during all critical portions of the procedure and immediately available to furnish services during the entire service or procedure….
>
> Documentation substantiating the above criteria must be available for audit purposes.

AFFSPM, Ch. 10, p. 10-33 ("Residents, Interns, Teaching Physician and Dentist").

**61.** Unlike the MCPM, the AFFSPM does not permit claims for concurrent surgeries in any context, since it requires that "for surgery or dangerous / complex procedures ... the ... teaching physician is present during all critical portions of the procedure and immediately available to furnish services during the entire service or procedure." AFFSPM, Ch. 10, p. 10-33. All claims of Defendants submitted to AHCCCS for concurrently conducted procedures and associated hospitalizations violate AFFSPM, Ch. 10, and are therefore false.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

62.    Arizona law requires AHCCCS contracted providers, such as SJHMC and BNA, to notify the Director of AHCCCS in writing of "any cases of suspected fraud or abuse." 36 ARS § 2918.01. SJHMC violated its reporting obligations by failing to notify AHCCCS of the fraudulent conduct of BNA physicians, including, without limitation, the Defendant Doctors, who were performing, and billing for, multiple unlawful concurrent surgeries and angiographies in violation of AFFSPM rules. SJHMC had actual knowledge of the wrongful conduct of BNA physicians by making multiple operating rooms available to the same BNA teaching surgeon at the same time and staffing them with SJHMC residents and nurses, thereby triggering its reporting obligations under 36 ARS §2918.01.

C.    **THE FALSE CLAIMS ACT ("FCA")**

63.    The FCA imposes liability on any person who:

knowingly[3] presents, or causes to be presented, a false or fraudulent claim for payment or approval;

knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) . . . .

31 U.S.C. §§ 3729(a)(1)(A),(B), and (C).

64.    The FCA defines a "claim" as

[A]ny request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

(i) is presented to an officer, employee, or agent of the United States; or

---

[3] As used in the FCA, "the terms 'knowing' and 'knowingly'— **(A)** mean that a person, with respect to information— **(i)** has actual knowledge of the information; **(ii)** acts in deliberate ignorance of the truth or falsity of the information; or **(iii)** acts in reckless disregard of the truth or falsity of the information; and **(B)** require no proof of specific intent to defraud." 31 U.S.C. §3729(b)(1)." Whenever the terms knowing or knowingly are used in this Amended Complaint, the FCA definitions apply, unless the context clearly indicates another definition.

19

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . .

31 U.S.C. § 3729(b)(2)(A).

65.    The Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), amended the FCA effective May 20, 2009 to, among other things, define the term "claim" to include "any request or demand ... for money ... that is made to a contractor, grantee or other recipient, if the money ... is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government provides or has provided any portion of the money ... requested or demanded, or will reimburse ... any portion of the money." 31 U.S.C. § 3729(b)(2)(A)(ii)(I)-(II).

## V.    BACKGROUND

### A.    Overview

66.    SJHMC is a nationally recognized teaching institution offering residency programs in 9 specialties.  Nearly all of the faculty who staff SJHMC's residency programs are employed by Dignity Health; an exception are the neurosurgical faculty who are employed by BNA, a private group practice that is owned by the surgeons themselves.

67.    BNI is situated in the 430,000-square-foot BNI Neuroscience Tower, which houses 11 dedicated neurosurgical operating rooms with ancillary staff, sub-specialized only in neurosurgical care, the most of any single institution in the world. Each operating room is about two times the size of a traditional operating room and is fitted with three 64-inch plasma screens, two high definition cameras, and access to a single 3T intraoperative MRI. Upon information and belief,

20

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

the unlawful billing practices described in this First Amended Complaint have contributed substantially to Dignity Health's ability to defray the significant costs associated with operating and maintaining the BNI Neuroscience Tower.

68.     The false billing practices and fraudulent statements on which they are based, as described in this First Amended Complaint, have been ongoing for years, continue in part to this date, and are not merely academic or technical in nature. By scheduling and proceeding with multiple concurrent surgeries, Defendants are routinely violating rules and regulations that are designed to ensure patient safety and proper training of residents. Patients rightly expect that their neurosurgeries will be lawfully performed by experienced, board-certified attending physicians.

69.     Indeed, before a surgical procedure begins at the BNI, the patient signs a consent form that identifies the "Practitioner Primarily Involved," defined in the form as the physician who "will perform or supervise your procedure." The consent form advises the patient that if the primary surgeon "cannot perform or complete your procedure, a trained substitute practitioner will do so." The consent form is equally important in what it does *not* disclose to the patient. Specifically, it does not inform the patient that an unsupervised resident will be performing any part of the surgical procedure alone or that the primary surgeon will be absent from the operating room for periods of time during which the operation is proceeding. Because of these misleading representations and material omissions, the form used by Defendants deprives patients of any meaningful opportunity to make an informed decision about whether to consent.

70.     A reasonable patient would conclude from the consent form that the primary surgeon would be physically present in the operating room at all times during the surgical procedure, unless, due to unforeseen circumstances, a "trained substitute practitioner" was required to step in. But contrary to both Medicare regulations and expectations arising from the Hospital's own consent form, BNA physicians shuttle between simultaneously scheduled surgeries, without the availability

21

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

of a qualified substitute practitioner. This not only precludes the primary surgeon from being able to properly supervise multiple surgeries at the same time and puts patients' health at risk, but it also deceives patients who thought their surgery would be lawfully performed in its totality by the experienced surgeon to whom they gave consent. This is a routine practice, which not only impacts the very patients BNA physicians and SJHMC are duty-bound to care for, but also the federal healthcare programs that pay for these unsafe procedures.

71.    Not surprisingly, according to a CMS analysis that was based on Medicare data on patients discharged between July 1, 2009, and March 31, 2012, SJHMC is one of 182 (out of 3,474) hospitals in the United States with a rate of serious surgical complications with "adjusted mortality [that] is higher than the U.S. national rate."

**B.    Dignity Health's Troubled History**

72.    Dignity Health and the hospitals it operates, including SJHMC, are no strangers to allegations of fraudulent billing practices and resulting FCA litigation, having previously paid nearly $37 million to resolve claims alleging fraud in billing outpatient services as inpatient care (*United States* ex rel. *Kathleen Hawkins v. Catholic Healthcare West, Inc.*, Case Number 09-5604 JCS (N.D. Cal. 2009)) ("the *Hawkins* litigation").

73.    In addition to the $37 million that Dignity Health paid to resolve the *Hawkins* litigation, Dignity Health entered into a Corporate Integrity Agreement ("CIA") that was intended to assure that its documented improper billing practices were not repeated. To that end, Dignity Health agreed in the CIA to:

(a)    Appoint a phalanx of officers, representatives, and committees - including, without limitation, a Corporate Compliance Officer, a Corporate Compliance Committee, Service Area Compliance Directors, Service Area Compliance Committees and Facility Compliance

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Professionals – whose purpose was to assure compliance with federal health care program requirements, including billing rules.

        (b)     Implement a Code of Conduct that reflected Dignity Health's "commitment to full compliance with all Federal health care program requirements, including its commitment to prepare and submit accurate claims consistent with such requirements" and Dignity Health's "requirement that all of its Covered Persons shall be expected to comply with all Federal health care program requirements and with Dignity Health's own Policies and Procedures." The CIA broadly defined "Covered Persons" to include, among others, all employees of Dignity Health, "persons who provide patient care items or services or who perform billing or coding functions on behalf of Dignity Health" and "all physicians and other non-physician practitioners who are members of Dignity Health's active medical staff."

        (c)     Adopt policies and procedures that addressed "billing and reimbursement, including:

              (i)     ensuring proper and accurate submission of claims and cost reports to Federal health care programs; [and]

              (ii)     ensuring the proper and accurate documentation of medical records."

        (d)     Adopt policies and procedures that addressed "documentation of medical records, including:

              (i)     ensuring proper and accurate documentation in the pre-admission, admission, case management, billing, coding and reimbursement process [and]

              (ii)     the personal obligation of each individual involved in the medical documentation process to ensure that such documentation is accurate."

        (e)     Provide written notification to the Office of Inspector General of any "matter that a reasonable person would consider a probable violation of criminal, civil, or

23

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized."

(f)    Certify on an annual basis compliance with the CIA, subject only to reported exceptions.

74.    Despite Dignity Health's promise in the CIA to "promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs" the fraudulent practices discussed below, which were ongoing at the time that Dignity Health entered into the CIA, expose Dignity Health's many violations of federal rules and regulations, as well as the self-imposed broad standards set forth in the CIA.

75.    Not only has Dignity Health failed to abide by the CIA, but as described below, it has knowingly engaged in fraudulent practices at multiple levels, including in its billing practices and documentation of medical procedures, while facilitating the fraud of BNA and its teaching physicians ("Covered Persons" under the CIA). From the fraudulent billing practices described in this First Amended Complaint, it is apparent that Dignity Health has ignored the policies and procedures it supposedly implemented as part of its resolution of the *Hawkins* FCA litigation, and has done nothing to rein in the fraudulent billing practices identified herein, which continue to this day.

76.    The promises made by Dignity Health in the CIA, including its promise to "promote compliance with the statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs," underscores the materiality of the violations of government rules and regulations described throughout this First Amended Complaint.

**C.    Dr. Kingsley's Knowledge of the Fraud**

77.    Dr. Kingsley is an original source under 31 U.S.C. § 3730(e)(4) of the facts and events alleged in this First Amended Complaint. He has direct and independent knowledge of the

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

information upon which the allegations are based and has voluntarily provided the information to the Government before filing this action. Dr. Kingsley's knowledge of the information supporting the allegations in this First Amended Complaint is based upon, among other sources, his personal observation and review of patient health care records, as explained herein.

78.     As a physician on the staff of SJHMC, Dr. Kingsley has personal knowledge of the fraudulent practices described in this First Amended Complaint, which occurred and continue to occur even now. For years, Dr. Kingsley has been assigned, from time to time, to provide medical services for neurosurgical procedures at BNI, and he routinely performed medical services in the main operating room ("OR") until mid-2011. With the opening of the 11-room BNI neurosurgical operating suite in 2006, the BNI ORs began sharing a pre-operative holding area with the main OR where Dr. Kingsley routinely practiced at the time. Since then, from time to time, Dr. Kingsley has observed the erasable "white board" schedule of the BNI OR showing, on a daily basis, multiple concurrent surgeries to be performed by the same BNA physician, as well as paper surgery schedules available to medical personnel reflecting the same multiple concurrently scheduled surgeries.

79.     Dr. Kingsley detected evidence of the fraud and related abuse in his position as a personal provider of healthcare services, by reviewing records available to him in the normal course of patient care, and the records of patients treated by his physician anesthesiology partners.

80.     In mid-2013, SJHMC converted its system of medical record preparation and maintenance from paper to an electronic system, Cerner PowerChart® (hereafter "Cerner"), which is accessible online by all SJHMC medical staff, including Dr. Kingsley. In addition to his personal observations, Dr. Kingsley gained knowledge of the facts and events alleged in this First Amended Complaint through a review of selected patient records residing in Cerner, including, if available, the:

(a)     "Patient Insurance And Demographics,"

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(b)    "Conditions of Admission,"

(c)    "History and Physical"

(d)    "Consent To Surgery, Procedure, or Treatment,"

(e)    "Operative Report,"

(f)    Dignity Health's "Perioperative Record,"[4]

(g)    "Anesthesia Record,"

(h)    Discharge Summary, and

(i)    Dignity Health's Coding Summary.

## VI.    THE DEFENDANTS' WRONGFUL CONDUCT

### A.    Two Concurrent Surgeries

**81.**    Surgical teaching, especially when simultaneous surgeries are performed, provides substantial economic advantages for the teaching surgeon and the hospital because under Medicare regulations the teaching surgeon may conduct two teaching surgeries simultaneously and bill the full fee for each surgery, even when some elements of a surgery are performed by a surgical resident, provided certain conditions are met. .

**82.**    The conditions that the Government imposes on payment for two simultaneous teaching surgeries reflect the Government's concern that financial incentives could lead a teaching physician to provide limited or even no supervision of a resident in order to maximize the number of surgeries and billing. For that reason, Medicare rules were drafted to require strict supervision of surgical residents while billing Medicare.

**83.**    Medicare imposes special billing conditions when residents assist in the patient's care. Generally, when a resident participates in the patient's care, "payment is made only if a teaching physician is present during the key portion of any service or procedure for which payment

---

[4] The perioperative record is entitled the "SJHMC NS Intra-Op Nursing Record."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

is sought." 42 C.F.R. §415.172 (a). And when a resident participates in "surgical, high-risk, or other complex procedures, the teaching physician must be present during all critical portions of the procedure and immediately available to furnish services during the entire service or procedure." 42 C.F.R. §415.172 (a)(1).

84.     The conditions that Medicare imposes for billing a single surgery differ from those imposed for billing two overlapping surgeries. For a single teaching surgery, if the teaching surgeon is present for the entire surgery and if his presence has been documented by the operating room nurse or the resident, the teaching surgeon need not document anything for billing purposes. MCPM, Ch. 12 § 100.1.1.

85.     Overlapping surgeries, however, impose a different and far more restrictive set of conditions for Medicare payment. The teaching surgeon involved in two overlapping surgeries cannot rely on the operating nurse, resident, or anyone else to document his or her presence during the procedure, unlike in a single surgery. Instead, when overlapping surgeries occur, one of which is payable under Medicare or another Government Health Care Program, "[t]he teaching surgeon **must personally document** in the medical record that he/she was physically present during the critical or key portion(s) of both procedures." MCPM, Ch. 12 § 100.1.2(A)(2) (emphasis added). If the teaching surgeon is not physically present during non-critical or non-key portions of the surgery, "he/she must be immediately available to return to the procedure, i.e., **he/she cannot be performing another procedure.**" MCPM, Ch. 12 § 100.1.2(A) (emphasis added).

86.     If a teaching surgeon "is not present during non-critical or non-key portions of the procedure and is participating in another surgical procedure, he/she must arrange for another qualified surgeon to immediately assist the resident in the other case should the need arise." MCPM, Ch. 12 § 100.1.2(A)(2). Following the rules set forth in the MCPM, when a provider fails to arrange

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

for a backup surgeon, the provider forfeits its entitlement to payment from any government healthcare program.

87.    When required documentation represents that the teaching surgeon was present for the entire surgery, the procedure, by definition, would appear on an audit as a single surgery, thereby relieving the teaching surgeon of the obligation to personally document his or her presence during the critical or key portion(s) of the procedure or to arrange for another qualified surgeon to assist the resident should the need arise. Here, BNA teaching surgeons, as well as Dignity Health nurses and residents, regularly documented concurrent surgeries as if each was a single surgery, which effectively concealed their violations of the Medicare and Medicaid rules.

88.    More specifically, BNA teaching surgeons routinely and knowingly performed two concurrent surgeries in circumstances that (i) prevented them from being present for the critical or key portions of both surgeries, (ii) rendered them unavailable to return to one of the procedures, and (iii) violated the requirement of arranging for "another qualified surgeon to immediately assist the resident in the other case should the need arise"—all of which left residents in one or both of the two rooms unsupervised and without any immediately available assistance. Then BNA, aided by Dignity Health nurses and residents, routinely and intentionally misrepresented the concurrent procedures either by documenting a BNA teaching surgeon's presence for all of both procedures or willfully failing to document the teaching surgeon's presence for the critical or key portions of both surgeries and the availability of a backup surgeon, as required by Medicare regulations—all in order to create the appearance that the concurrent surgeries proceeded as non-concurrent, separate surgeries.

89.    Defendants knowingly misrepresented concurrent surgeries as separate, non-concurrent surgeries to induce the Government to pay, when payment would have been precluded under rules and regulations governing payment of claims under Medicare and other Government Health Care Programs had Defendants documented the surgeries honestly and in accordance with

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Medicare rules and regulations.

90.    The routine falsification of operating room records by Dignity Health employees made each surgery appear to have been non-concurrent, thereby making the practice resistant to detection through normal auditing methods, exposing consciousness of guilt, undercutting the fundamental concept upon which teaching hospitals are built, and unduly and unlawfully enriching Dignity Health and BNA.

91.    Defendants' portrayal of concurrent surgeries as non-concurrent is fraudulent on at least four levels, each of which is designed to assure payment under government programs and avoid detection on audit.

(a)    The first fraud occurs when the Hospital, through its medical staff, nurses and residents, and using its own false and misleading consent form, fails to obtain a proper informed consent for the conduct of two, three, or four concurrently scheduled and conducted procedures, a consent that in all likelihood would be --were it truthful--impossible to obtain.

(b)    The initial fraud is then compounded when the operating nurse, resident, or BNA teaching surgeon falsely notes the presence of the BNA teaching surgeon for the entire procedure, thereby creating the illusion that the surgeon was involved in a single procedure.

(c)    The fraud is then further compounded by the BNA teaching surgeon who, contrary to the personal reporting obligations arising from the concurrent surgeries, fails to personally document his or her presence during the critical or key portions of the procedures, as required by MCPM, Ch. 12 § 100.1.2(A)(2). Of course, the teaching surgeon is seemingly freed of this obligation because the initial fraud has deceptively portrayed both surgeries - to the patient and to any auditor - as single surgeries with the teaching surgeon present for the entirety of each procedure.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

    (d)  The BNA teaching surgeon then furthers the fraud by failing to arrange for another qualified surgeon to be "immediately available to assist with the procedure" (MCPM Ch. 12 § 100.1.2(A)) or to arrange for another qualified surgeon to "immediately assist the resident" (MCPM Ch. 12 § 100.1.2(A)(2))— obligations the teaching surgeon is again relieved from because of the initial fraud.

  **92.**  Defendants knew and understood the requirements for billing Medicare and knew that the concurrent surgeries for which they were billing did not meet those requirements. By submitting its application for enrollment in the Medicare program, each Defendant promised "to abide by the Medicare laws, regulations and program instructions that apply to" the particular provider and acknowledged "that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions . . . . and on the provider's compliance with all applicable conditions of participation in Medicare." CMS-855A, CMS-855B, and CMS-855I. But Defendants still billed Medicare.

  **93.**  Dignity Health knowingly assisted the BNA physicians in their illegal Medicare billing by permitting doctors to schedule simultaneous surgeries without the required backup surgeon and then, fully aware that the required backup was not available, by providing the same BNA teaching surgeon with access to multiple operating rooms at the same time. Dignity Health provided a system of "block scheduling" to the BNA surgeons, by which Dignity Health routinely reserved blocks of two or more operating rooms (each staffed with Dignity nurses and residents) for the same surgeon on a specific day. Through this method of scheduling, Dignity Health expressly and knowingly provided facilities for surgeries that, on their face, were scheduled to be done concurrently.

  **94.**  Dignity Health directly participated in the fraud by creating false and misleading documents to justify the illegal billing, including without limitation, and in addition to its

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

fraudulently obtained informed consent, surgical reports, such as perioperative records prepared by Dignity Health nurses, who, as demonstrated in the examples cited below, reported the same physician's presence in two or more operating rooms for the very same extended period of time. In other words, Dignity Health nurses falsely documented in Dignity Health medical records that the teaching surgeon was in two or more places performing two or more different surgeries simultaneously, often for hours on end. On information and belief, Dignity Health nurses are instructed by their supervisors to falsely document in medical records that the teaching surgeon was present 100% of the time in each patient's operating room during concurrent surgeries. Thus, even though these teaching surgeons were engaged in concurrent surgeries, Dignity Health prepared false medical records documenting the attendance of the teaching surgeons at each surgery simultaneously - a physical impossibility. For example, the images below are excerpted from the Dignity Health Perioperative Records of two patients (from left to right, Patients 38 and 39) with the same BNA teaching surgeon, Defendant Dr. Chang (denoted as "Surgeon Primary"), on August 14, 2013:

| - Case Attendance | | - Case Attendance | |
|---|---|---|---|
| Role Performed | Surgeon Primary | Role Performed | Surgeon Primary |
| Role Performed Comment | | Role Performed Comment | |
| Time In | 08/14/13 13:56:00 | Time In | 08/14/13 13:48:00 |
| Time Out | 08/14/13 17:30:00 | Time Out | 08/14/13 18:03:00 |

(Note: the above medical record images have been formatted and partially redacted for illustrative purposes and to remove individually identifiable information.[5])

95.    By providing the facilities and personnel to permit two, three and even more surgeries to proceed simultaneously in violation of Medicare rules and regulations and in the circumstances described in this First Amended Complaint, Dignity Health routinely and knowingly (i) violated

---

[5] The procedures that Patients 38 and 39 underwent with Dr. Chang are described in detail at paras. 174 *ff*.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

31

patients' "right to receive care in a safe setting" (42 C.F.R. § 482.13(c)(2)) and (ii) failed to provide surgical services "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51). Submission of Dignity Health's claims to federal healthcare programs falsely certified compliance with 42 C.F.R. § 482.13(c)(2) and 42 C.F.R. § 482.51, causing each such claim to be false.

96.    Further, as a Condition of Participation in the federal healthcare programs, the Hospital maintains a quality assurance ("QA") system and department. *See* 42 C.F.R. § 482.21. Dignity Health's QA Department reports to Dignity Health administration to track quality indicators and improve patient outcomes. *See id.*

97.    Rather than use this QA system to further its intended goals, Dignity Health manipulated the system to cover up and further the fraud. In particular, QA Department employees working for Dignity Health knowingly and willingly altered surgical records to make unbillable cases appear billable.

98.    By example, in one instance involving two concurrent spine surgeries (one for Patient 64 and the other for Patient 65) on February 13, 2014, the teaching surgeon responsible for both surgeries, Defendant Dr. Little, personally documented that he was "present throughout the entire procedure" in the surgical record for Patient 64, a Medicare beneficiary. The Dignity Health nurse assisting with the surgery listed Dr. Little's times in and out of the operating room to show that the surgeon had been present for the entire procedure. However, Dr. Little omitted to personally document his presence in the surgical record for Patient 65, a VA Fee Services beneficiary. Rather, the Dignity Health Resident documented only that the teaching surgeon "was present for all critical portions and could assist as necessary." Dr. Little failed to document the availability of a backup surgeon for either Patient 64's or Patient 65's procedure, as required by applicable MCPM regulations, as cited above.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

32

**99.**    To ensure that the surgery and related hospital services were nevertheless billable to the Government, an individual working for Dignity Health and identified in the medical record as "QA" retroactively modified the teaching surgeon's operative report of Patient 64 with a false addendum dated February 17, 2014. The addendum stated that a backup surgeon, Defendant Dr. Kakarla, had been arranged to be immediately available to assist as required by applicable regulations. In reality, Dr. Kakarla had been performing a spine surgery on Patient 66, an AHCCCS beneficiary, at the time in question and was therefore unavailable.

**100.**    Defendants directly benefitted from the fraud by collecting enormous fees that they would not have been able to collect had the simultaneous surgeries been performed, documented and billed truthfully and in accordance with government rules and regulations.

**101.**    Defendants knew that BNA doctors were scheduling two concurrent surgeries that could not be conducted within the limiting conditions of the Medicare rules and regulations. Indeed, Dignity Health and BNA scheduled concurrent surgeries, as reflected in the surgery schedules prepared by Dignity Health.

**102.**    Defendants' submission of, and reimbursement for, Medicare and other Government Health Care Program claims based on surgeries that they knew did not comply with Medicare rules and regulations renders all such claims fraudulent.

**103.**    By submitting claims arising from two concurrent surgeries conducted in the manner described herein, each of the Defendants violated provisions of the FCA, specifically including 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C).

**B.    Three or More Concurrent Surgeries**

**104.**    Medicare regulations preclude the surgeon from billing for triple concurrent surgeries performed by the same teaching surgeon under any circumstances and bar the Hospital from billing for the associated hospitalization without providing the patient with information needed to make an

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

33

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

informed decision about whether to consent to the surgery. 42 C.F.R. § 482.13(b)(2), 2 C.F.R. § 482.24(c)(4)(v), 42 C.F.R. § 482.51(b)(2), CMS State Operations Manual - Appendix A (Rev. 151, 11-20-15), CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.13(b)(2). In the case of multiple concurrent surgeries, informed consent requires full disclosure of the teaching physician's participation in multiple simultaneous surgeries, the resulting limits on the teaching physician's participation, and the unsupervised participation of residents.   When three surgeries proceed concurrently, "[T]he role of the teaching surgeon ... in each of the cases is classified as a supervisory service to the hospital rather than a physician service to an individual patient and is **not payable under the physician fee schedule.**" MCPM Ch. 12 § 100.1.2(A)(2) (emphasis added).

105.   BNA teaching surgeons regularly flaunted the rule precluding billing for triple concurrent surgeries by permitting the same teaching surgeon to conduct three—and sometimes more—simultaneous surgeries while knowingly and falsely documenting each procedure as a single teaching surgery for which payment would be proper. The Hospital regularly ignored its obligation to provide patients with sufficient information to enable them to decide whether to proceed or reject a given procedure.

106.   In order to avoid detection of the three or more overlapping procedures that were being improperly billed to Medicare, BNA surgeons and Dignity Health nurses and residents disguised the unlawful concurrencies by falsely documenting the teaching surgeon's presence in a way that would create the appearance that the teaching surgeon performed single, separate procedures. Defendants employed this stratagem to induce HHS to make Medicare payments that it otherwise would not have made.

107.   As in the case of two overlapping surgeries, Dignity Health knowingly assisted the BNA physicians in their illegal Medicare and Medicaid billing by scheduling teaching physicians to perform three or more simultaneous surgeries without the required backup. Then, fully aware that

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

the required backup was not available and that Medicare billing was never appropriate when a teaching physician was involved in three or more overlapping surgeries, Dignity Health gave the same BNA teaching surgeon access to multiple operating rooms at the same time.

108.    Dignity Health directly participated in the fraud by creating false and misleading documents to justify the illegal billing, including without limitation surgical reports, such as perioperative records prepared by Dignity Health nurses, who, as demonstrated in the examples cited below, reported the same physician's presence in three or more operating rooms at the same time. For example, the images below are excerpted from the Dignity Health Perioperative Records of three patients, from left to right Patients 13, 14, and 15, with the same BNA teaching surgeon, Defendant Dr. Theodore (denoted as "Surgeon Primary") on January 27, 2014:

| SJHMC NS - Case Attendance | | SJHMC NS - Case Attendance | | SJHMC NS - Case Attendance | |
|---|---|---|---|---|---|
| Role Performed | Surgeon Primary | Role Performed | Surgeon Primary | Role Performed | Surgeon Primary |
| Role Performed Comment | | Role Performed Comment | | Role Performed Comment | |
| Time In | 01/27/14 07:48:00 | Time In | 01/27/14 07:45:00 | Time In | 01/27/14 09:28:00 |
| Time Out | 01/27/14 12:03:00 | Time Out | 01/27/14 13:19:00 | Time Out | 01/27/14 11:34:00 |

(Note: the above medical record images have been formatted and partially redacted for illustrative purposes and to remove individually identifiable information.[6])

109.    Defendants directly benefitted from the fraud by collecting enormous fees that they would not have been permitted to receive had the simultaneous surgeries been performed, documented, and billed truthfully and in accordance with government rules and regulations.

---

[6] The procedures that Patients 13, 14 and 15 underwent with Dr. Theodore designated as the "Surgeon Primary" are described in detail at paras. 165 *ff.*

35

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

**110.**    Defendants knew that BNA doctors were scheduling three or more concurrent surgeries that could not be conducted within the limiting conditions of the Medicare rules and regulations and knowingly failed to so inform patients.

**111.**    Defendants knew and understood the requirements for billing Medicare and knew that they could not bill Medicare when three or more surgeries were proceeding simultaneously. By submitting its application for enrollment in the Medicare program, each Defendant promised "to abide by the Medicare laws, regulations and program instructions that apply to" the particular provider and acknowledged "that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions . . . . and on the provider's compliance with all applicable conditions of participation in Medicare." CMS-855A, CMS-855B, and CMS-855I. But Defendants still billed Medicare.

**112.**    Defendants' submission of, and reimbursement for, Medicare and other Government Health Care Program claims based on surgeries that they knew did not comply with Medicare regulations rendered all such claims false and fraudulent.

**113.**    By submitting claims for three or more overlapping surgeries in the manner described herein, each of the Defendants violated provisions of the FCA, specifically including 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C).

**C.    Angiographies**

**114.**    While Medicare regulations generally permit the teaching surgeon to bill for a single teaching surgery or two overlapping surgeries when the strict requirements of the C.F.R. and MCPM are followed, certain procedures, because of their complexity or the risks involved, permit billing "only when the teaching physician is present with the resident." MCPM, Ch. 12 § 100.1.5. Procedures falling within MCPM, Ch. 12 § 100.1.5 include, but are not limited to, interventional radiology and cardiac catheterization. This rule requires the presence of the teaching physician at all

36

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

times during interventional radiology and catheterization procedures such as cerebral angiography and effectively precludes billing for overlapping procedures. MCPM, Ch. 12 §§ 100, 100.1.5. The rule also prevents a teaching physician from billing Medicare or other Government Health Care Programs for those portions of an angiography during which the teaching physician was not present with the resident.

115.    BNA frequently scheduled single and overlapping angiographies, including angiographies involving beneficiaries of Medicare or another government program, in which the teaching surgeon was not present with the resident throughout the procedure, but, upon information and belief, then billed the Government for the entire amount of one or both procedures in violation of the requirements of MCPM, Ch. 12 § 100.1.5.

116.    Hospital claims associated with angiography are false for failure of informed consent and other Conditions of Participation as alleged in this First Amended Complaint.

117.    Dignity Health knowingly assisted the BNA physicians in their illegal Medicare and Medicaid billing by permitting doctors to schedule angiographies knowing that the teaching surgeon would not be present with the resident for substantial portions and by giving the same BNA teaching surgeon access to two angiography rooms at the same time, each of which was staffed with Dignity Health employees, including nurses.

118.    Dignity Health directly participated in the fraud by creating false and misleading documents to justify the illegal billing.

119.    Defendants directly benefitted from the fraud by collecting enormous fees that they would not have been able to collect had the simultaneous procedures been performed, documented and billed truthfully and in accordance with government rules and regulations.

120.    Defendants knew that BNA doctors were scheduling angiographies that could not be conducted within the limiting conditions of the Medicare regulations.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

121.    Defendants knew and understood the requirements for billing Medicare and knew that they could not bill Medicare for angiographies for which the teaching physician was not present during the entire procedure, but Defendants still billed Medicare.

122.    Defendants' submission of, and reimbursement for, Medicare claims based on angiographies that they knew did not comply with Medicare regulations rendered all such claims false and fraudulent. By submitting physician and hospital claims for overlapping angiographies and for angiographies for which the teaching physician was not present during the entirety of the procedure conducted without informed consent and in the manner described herein, each of the Defendants violated provisions of the FCA, specifically including 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C).

## D.    Informed Consent

123.    Hospitals seeking reimbursement for surgical procedures from the Medicare or Medicaid programs must obtain from the patient a properly executed informed consent form for the operation before surgery begins, except in emergencies. 42 C.F.R. § 482.51(b)(2); see also 42 C.F.R. § 482.13 ("The patient . . . has the right to make informed decisions regarding his or her care. The patient's rights include being informed of his or her health status, being involved in care planning and treatment, and being able to request or refuse treatment"). The principal reason behind this requirement is to assure that patients have sufficient information to enable them "to evaluate a proposed surgery before agreeing to the surgery." CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2).

124.    The consent that patients gave to enable Defendants to proceed with surgical procedures described in this First Amended Complaint was anything but informed. The consent form that Defendants required their patients to sign did not advise patients that parts of their procedures would be performed by unsupervised residents, but instead simply identified the primary physician

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

38

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

"who will perform or supervise your procedure." While the form advised patients that "[i]n some cases" residents "may assist" the primary surgeon, the form also promised patients that such assistance would be provided "<u>under the guidance and/or supervision of your primary surgeon</u>" (emphasis added). Thus, patients gave their consent with the assurance that the identified primary surgeon would conduct the operation and that any services discharged by residents would be performed under the watchful eye of the primary surgeon. By stating that residents may "assist" the primary surgeon, the consent form used by Defendants treated residents no differently from registered nurses, nurse practitioners, and physician assistants, all of whom were also listed on the consent form as those who might "assist" the primary surgeon.

125.    Defendants aggravated the fraud they perpetrated through billing multiple concurrent surgeries by obtaining their patients' consent to surgeries without disclosing that (i) the teaching physician would be involved in multiple concurrent surgeries, (ii) residents would perform parts of their procedures, including critical or key parts, with little or no supervision from the teaching physician, and (iii) the teaching physician would be absent from the operating room for parts of the surgery. By failing to disclose these critically important facts, Defendants deprived their patients of the opportunity to make an informed decision whether to consent to the surgery, in violation of Medicare and Medicaid regulations, including 42 C.F.R. § 482.13 and 42 C.F.R. § 482.51(b)(2).

126.    Defendants willfully employed the misleading consent forms to maximize the likelihood that patients would consent to the proposed surgeries, knowing full well that if patients were told that their surgeries would primarily be performed by inexperienced residents, and that the "supervising" surgeon would also be responsible for one or more surgeries occurring simultaneously in other operating rooms, many or most would withhold consent.

127.    Informed consent regulations included in 42 C.F.R. § 482.13 and 42 C.F.R. § 482.51(b)(2) are CoPs that require hospital compliance "in order to receive Medicare/Medicaid

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

payment." CMS State Operations Manual - Appendix A (Rev. 151, 11-20-15). By submitting requests for reimbursement under federal programs such as Medicare and Medicaid, Dignity Health certified compliance with all requirements of the federal program pursuant to which reimbursement was sought. However, Dignity Health's use of the misleading consent form, which deprived its patients of the opportunity to give informed consent, rendered false its certification of compliance and thereby furthered Defendants' conspiracy to violate the FCA.

128.    Dignity Health knew when it submitted requests for reimbursement under federal programs that its certification of compliance was false because it knew that the forms used to obtain patient consent to surgeries failed to disclose the critically important information described above, while minimizing and thus misleading patients about the role inexperienced residents would have in performing their procedures.

129.    Those patients could not give informed consent to their surgeries because Dignity Health failed to notify them, and instead actively concealed, that other surgeries performed by the same surgeon would proceed at the same time as theirs; that parts of their procedures, including critical or key parts, would be performed by unsupervised residents; and that the primary surgeon would be absent from the operating room for periods of time while their surgeries were progressing. Dignity Health knew that the signed consent forms included in patient charts to document "informed consent" were false and engaged in this misrepresentation and concealment in order to promote Defendants' scheme to submit false claims and thereby enrich Dignity Health.

130.    Dignity Health knew and understood the requirements for billing Medicare and knew that it could not bill Medicare for surgical procedures without obtaining the patient's informed consent to the operation.[7] Nevertheless, Dignity Health still billed Medicare and successfully

---

[7] SJHMC employs teaching surgeons for its separate *general* surgery residency program and so is fully familiar with all aspects of reimbursement for surgical teaching and associated admissions for beneficiaries of federal healthcare programs.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

obtained patients' signed consent forms in order to advance Defendants' plan to profit through the submission of false and fraudulent claims.

131.    Dignity Health's submission of, and reimbursement for, Medicare claims based on surgeries for which it had not received a patient's informed consent to the surgical procedure rendered all such claims false and fraudulent.

132.    By submitting claims for reimbursement for surgeries without having obtained a patient's informed consent to the surgery and certifying compliance with all Medicare regulations, Dignity Health violated provisions of the FCA, specifically including 31 U.S.C. §§ 3729(a)(1)(A), (B), and (C).

**E.    SJHMC's and BNA's False Certification of Compliance**

133.    Claims for the services of providers and suppliers must be submitted to Medicare, Medicaid or other federal payors on government-prescribed forms. (42 C.F.R. § 424.32). Form CMS-1450, entitled the "UB-04 Uniform Bill," requires institutional providers to submit certain information including the "Revenue Code," the "Revenue Code Description" and "HCPCS / RATE / HIPPS Code[s]" for the specific patient at issue in a claim, which codes designate the procedures and services provided to the patient. Form CMS1450 also requires institutional providers to list "Operating Provider Name and Identifiers (including NPI)" when "a surgical procedure code is listed on [a] claim." MCPM, Ch. 25 § 75.5. Such mandatory information includes "[t]he name and identification number of the individual with the primary responsibility for performing the surgical procedure(s)." *Id.* By submitting Form CMS 1450 for reimbursement of services, a provider agrees that "THE CERTIFICATION ON THE REVERSE APPLY TO THIS BILL AND ARE MADE A PART HEREOF." The terms incorporated by this certification and appearing on the reverse of the Form CMS-1450 are, in relevant part, as follows:

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

UB-04 NOTICE: THE SUBMITTER OF THIS FORM UNDERSTANDS THAT MISREPRESENTATION OR FALSIFICATION OF ESSENTIAL INFORMATION AS REQUESTED BY THIS FORM, MAY SERVE AS THE BASIS FOR CIVIL MONETARY PENALTIES AND ASSESSMENTS AND MAY UPON CONVICTION INCLUDE FINES AND/OR IMPRISONMENT UNDER FEDERAL AND/OR STATE LAW(S).

Submission of this claim constitutes certification that the billing information as shown on the face hereof is true, accurate and complete. That the submitter did not knowingly or recklessly disregard or misrepresent or conceal material facts. The following certifications or verifications apply where pertinent to this Bill:

. . .

6. ... Records adequately describing services will be maintained and necessary information will be furnished to such governmental agencies as required by applicable law.

. . .

8. For Medicaid purposes: The submitter understands that because payment and satisfaction of this claim will be from Federal and State funds, any false statements, documents, or concealment of a material fact are subject to prosecution under applicable Federal or State Laws.

**134.** The MCPM is a coordinated document. Submission of the hospital's claim certifying a specific teaching surgeon as "the individual with primary responsibility for performing [the surgery]" pursuant to Chapter 25 of the MCPM, when the hospital has actual knowledge that the conduct of its employee residents and medical staff members, and associated teaching neurosurgeons

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

42

1  violates Chapter 12 of the MCPM, is a false certification of compliance that causes the hospital's

2  claim to be false.

3      135.    Claims of physicians and other suppliers for government payment for medical

4  services must be submitted on Form CMS-1500.  Physicians or suppliers who sign Form 1500

5  certify, in relevant part, that  (i) they are familiar "with all applicable laws, regulations, and program

6  instructions, which are available from the Medicare contractor;" (ii) they "have provided sufficient

7  information required to allow the government to make an informed eligibility and payment

8  decision;" (iii) the claim "complies with all applicable Medicare and/or Medicaid laws, regulations,

9  and program instructions for payment;" (iv) the "services . . . were medically necessary and

10 personally furnished by me or were furnished incident to my professional service by my employee

11 under my direct supervision, except as otherwise expressly permitted by Medicare or TRICARE;"

12 and (v) "for each service rendered incident to my professional service, the identity (legal name and

13 NPI, license #, or SSN) of the primary individual rendering each service is reported in the designated

14 section."

15     136.    By requiring claims to be submitted on specified forms, 42 C.F.R. § 424.32

16 incorporates the substantive provisions, including certifications, of those forms. And each claim

17 submitted that did not provide complete information demonstrating that the claim was eligible for

18 payment; that did not comply with all Medicare or Medicaid laws, regulations or instructions; or that

19 misrepresented the identity of the physician providing the services, constituted a violation of  42

20 C.F.R. § 424.32, as well as 42 C.F.R. § 424.5 (requiring providers and suppliers, as a condition of

21 payment, to provide "sufficient information to determine whether payment is due and the amount of

22 payment").

23     137.    The conduct of Dignity Health and BNA of facilitating, engaging in and billing for

24 two concurrent surgeries in the absence of a backup teaching surgeon or three or four concurrent

43

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

teaching surgeries conducted in substantial part by residents operating alone violates 42 C.F.R. § 482.51(b)(2) and Chapter 12 of the MCPM.

**F.    GME Payments**

138.    The Medicare Cost Report and required certification are vitally important to prevent and remedy fraud and abuse in the public health care financing system because the government can review only a small fraction of the claims submitted and therefore must rely on the accuracy of MCRs submitted by providers.

139.    From 2011-2017, SJHMC received and retained in excess of $200 million in GME payments based on MCRs that certified the Hospital's compliance with all laws and regulations regarding the provision of health care services.

140.    Despite its MCR certification, SJHMC knew when it submitted each MCR that residents in BNI's neurosurgery residency program were not receiving the training for which GME payments were intended.  To the contrary, residents in BNI's neurosurgery residency program were routinely and systematically left to their own devices and deprived of necessary training because the very BNA teaching surgeons who were responsible for their training were concurrently attending to other patients in other operating rooms made available by SJHMC.

141.    Each MCR submitted by SJHMC between 2011 and the present was false when submitted and known by SJHMC to be false. Contrary to SJHMC's MCR certification of compliance with all health care laws and regulations, SJHMC knew when it submitted each MCR, and the attendant claim for GME payments, not only that residents were being denied the training that GME payments were intended to pay for, but also that:

(a)    The consent form used by SJHMC to obtain patient consent to surgery deprived  the patient of the opportunity to make an informed decision whether to consent to the surgery, in violation of Medicare and Medicaid regulations, including 42 C.F.R. § 482.13 and 42

44

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

C.F.R. § 482.51(b)(2). SJHMC did not inform, but instead actively misled, patients, including without limitation each patient referred to in the examples set forth in this First Amended Complaint, about their chosen surgeon's role and the role of residents in their procedures. The form used by SJHMC to obtain a patient's consent to a surgical procedure failed to disclose that other surgeries supervised by the same surgeon would proceed at the same time as theirs; that parts of their surgical procedures, including critical or key parts, would be performed by unsupervised residents; and that the patient's chosen surgeon would be absent from the operating room for extended periods of time while his or her surgery was progressing. SJHMC's failure to comply with all government rules and regulations regarding patient informed consent rendered each MCR, and the accompanying certification of compliance with healthcare laws and regulations, submitted by SJHMC false and a material violation of the FCA.

(b)     By making two, three and even four operating rooms available to the same BNA surgeon at the same time, and by providing access to multiple operating rooms knowing that no backup surgeon had been designated, SJHMC willfully compromised the safety of its patients, including those patients included in the examples contained in this First Amended Complaint, in violation of its obligation to protect patients' right to receive care in a safe setting (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51). SJHMC's failure to provide care in a safe setting in accordance with acceptable standards of practice rendered each MCR, and the accompanying certification of compliance with healthcare laws and regulations, submitted by SJHMC false and a material violation of the FCA.

(c)     By making its operating rooms available for residents to perform diagnostic angiographies in the absence of a teaching surgeon, SJHMC willfully compromised the safety of its patients, including those patients included in the examples contained in this First Amended Complaint, in violation of its obligation to protect patients' right to receive care in a safe setting (42

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1    C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. §

2    482.51). SJHMC's failure to provide care in a safe setting in accordance with acceptable standards

3    of practice rendered each MCR, and the accompanying certification of compliance with healthcare

4    laws and regulations, submitted by SJHMC false and a material violation of the FCA.

5

6        142.    Upon information and belief, Medicare would not have made GME payments to

7    SJHMC had it known that SJHMC (i) compromised patient safety by making multiple operating

8    rooms available to the same BNA surgeon at the same time and by permitting unsupervised residents

9    to perform extensive portions of complex surgical procedures, including critical or key portions of

10   those procedures, while the surgeon who was responsible for the procedure and for training the

11   resident, was performing or supervising one or more additional surgical procedures in another

12   operating room made available by SJHMC, and (ii) obtained patient consent by means of a form that

13   failed to disclose any limitations on the BNA surgeon's availability, that failed to inform the patient

14   that unsupervised residents would be performing portions of the patient's procedure, and that failed

15   to inform the patient that the BNA surgeon responsible for the patient's care would be performing or

16

17   supervising one or more other concurrent surgical procedures in other operating rooms made

18   available by SJHMC.

19

20       143.    The ACGME, the accrediting body for SJHMC's residency program, establishes

21   standards that hospitals must meet in order to receive and maintain ACGME accreditation.  All

22   accredited programs are intended to provide residents with training and the opportunity to participate

23   in appropriate levels of supervised patient care.

24       144.    Through its practice of permitting and facilitating multiple concurrent surgeries,

25   SJHMC has necessitated that residents in its neurosurgery program would be required to perform

26

27   significant portions of surgeries without the supervision or training of a BNA teaching surgeon,

28   thereby frustrating a key reason for GME payments.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

145. Upon information and belief, the ACGME would not have accredited SJHMC's neurosurgical residency program had it been aware that SJHMC residents were not receiving appropriate levels of training and supervision. Without ACGME accreditation, SJHMC would have been ineligible to receive Medicare GME payments.

**G.    Materiality**

146. Compliance with each of the rules and regulations cited throughout this First Amended Complaint was a material condition of payment. Defendants' misrepresentations and false certifications of compliance with government healthcare program instructions, rules, regulations, and conditions as described above and demonstrated in the examples below, were material to the Government's decision to pay claims submitted by Defendants.

147. The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The materiality of the Defendants' fraud is apparent from (i) the language of the regulations and rules violated by the Defendants, (ii) the government's historical aggressive pursuit of suppliers and providers whose health care fraud has involved violations of the same or similar regulations and rules involved here, (iii) Congressional investigations into violations of regulations and rules governing payment of Medicare payments in a teaching setting, (iv) the severe consequences, including civil and criminal penalties, that can be imposed on suppliers and providers who submit misleading claims for payment, and (v) the terms of the Dignity CIA, which requires the Hospital to comply with all federal healthcare laws, regulations, and program instructions and to impose the same compliance obligation on all members of its medical staff.

148. Dignity Health's certification of compliance with all government regulations, including those requiring informed consent, furthered Defendants' fraudulent scheme and was material to the Government's decision to pay. A reasonable patient would not consent to surgery

47

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

knowing that his or her primary surgeon would relinquish responsibility for major portions of the surgical procedure to unsupervised residents, while the primary surgeon attended to another patient's operation. And in the absence of informed consent, the Government would not pay requests for reimbursement. Moreover, Dignity's failure to obtain informed consent is material because compliance is more than simply a CoP; rather, Dignity is required to comply with its informed consent obligations in order to receive government payments. CMS State Operations Manual - Appendix A (Rev. 151, 11-20-15) ("Hospitals are required to be in compliance with the Federal requirements set forth in the Medicare Conditions of Participation (CoP) <u>in order to receive Medicare/Medicaid payment</u>)" (emphasis added).

149.    Materiality is apparent from the plain language of the regulations and rules violated by the Defendants. Compliance with those Medicare regulations and rules identified herein is specifically made a condition of payment, and as such represent an important factor in the materiality analysis. Thus, for example, (i) 42 C.F.R. § 415.170 is entitled, "<u>Conditions for payment</u> on a fee schedule basis for physician services in a teaching setting" (emphasis added); (ii) 42 C.F.R. § 415.172, which is referred to in 415.170 and adds specificity to the general provisions of 42 C.F.R. § 415.170, permits Medicare payment "only if" the teaching physician complies with the provisions of 415.172; and (iii) relevant provisions of the MCPM prohibit teaching physicians from even submitting bills in the absence of compliance of MCPM rules.[8]

150.    The history of 42 C.F.R. § 415.172 further confirms the materiality of observing Medicare's requirements regarding the presence of the teaching physician. In explaining the policy behind regulations governing Medicare payment in a teaching setting, HHS stated, "We proposed to

---

[8] See, for example, MCPM Ch. 12 § 100.1.2 ("<u>In order to bill</u>, for surgical, high-risk, or other complex procedures, the teaching physician must be present during all critical and key portions of the procedure and be immediately available to furnish services during the entire procedure"); MCPM Ch. 12 § 100.1.2.A.(Describing the conditions requiring compliance "[i]n order to bill Medicare for two overlapping surgeries" and precluding payment for three concurrent surgeries).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

clarify our policy because it has not been enforced consistently across carriers. More specifically, we have learned that some teaching physicians are billing Medicare and receiving Part B payment for services even when the service is performed by an intern or resident outside the presence of the teaching physician and the teaching physician has minimal involvement, or no involvement, in the service. <u>Under the physician fee schedule, payment amounts are intended to reflect the amount of resources required for a particular service, and we believe a teaching physician should not receive a resource-based fee schedule amount when the physician has expended little or no resources with respect to the service.</u>" 63 FR 63124, 63142 (emphasis added).

151.    The history of 42 C.F.R. § 415.172 also confirms the materiality of Medicare's <u>documentation</u> provisions. Requiring teaching physicians to be present in order to be paid for services rendered in a teaching setting without requiring corresponding documentation would encourage fraud of the kind involved here. Recognizing this, HHS observed, "The policy we are adopting cannot be enforced without some documentation of the presence of the teaching physician during procedures and the personal involvement of the teaching physician in evaluation and management services." 63 FR 63124, 63147.

152.    Materiality is also apparent from other litigation and the settlements that the government has exacted from defendants who were similarly situated to the Defendants here and were accused of violating the same or similar regulations and rules. In this regard,

(a)    The government has twice pursued and settled claims against the University of Pittsburg Medical Center for fraudulent billing practices that included billing for services of teaching neurosurgeons provided in a teaching setting.

(b)    Similarly, the government settled an FCA suit against the Medical College of Wisconsin, arising from the defendants' improper billing for concurrent surgeries in a teaching setting.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(c)     A Senate Finance Committee report, also discussed in the following paragraph, noted that the Department of Health and Human Services Office of Inspector General ("HHS OIG") "extensively audited billing practices at teaching hospitals in the past, and investigated allegations of whistleblowers related to such practices. HHS OIG reported that 36 teaching hospitals settled FCA or other similar cases related to these audits and investigations between 1995 and 2004. More recently, in the last 12 years, HHS OIG officials informed Committee staff that there have been 9 additional settlements by teaching hospitals involving similar issues."

(d)     A 1998 General Accounting Office Report, also discussed below, noted that between 1995-1998, as the result of audits of Medicare billing in a teaching setting, the government reached settlements with four teaching hospitals, totaling $67 million. The audits were prompted by a separate $30 million settlement reached in 1995 with the University of Pennsylvania over the practice of failing to adequately document teaching physicians' involvement in services provided by residents. Thus, between 1995 and 1998 alone, teaching hospitals paid nearly $100 million (in excess of $150 million today) to settle claims of improper billing practices in a teaching setting.

**153.**     Materiality of the Defendants' fraudulent billing practices in a teaching setting is further underscored by Congressional oversight and investigations into Medicare billing by teaching hospitals and teaching physicians. For example,

(e)     In 2016, "Alarmed by the allegations of patient harm, surgeon misconduct, and inappropriate billing highlighted in" a report in the Boston Globe, the Senate Finance Committee (the "Committee") investigated the practice of concurrent / overlapping surgeries in a teaching setting. The Committee's report (hereinafter, the "Senate FC Report"):

(i)     Emphasized that payment for teaching physician services required compliance with Medicare rules and regulations: "In order to be eligible for payment under the Medicare Physician Fee Schedule, health care services must meet additional CMS requirements."

50

1    The Senate FC Report cited Section 100.1.2 of the MCPM (also cited throughout this First Amended

2    Complaint) as support for this statement;

3              (ii)    In the same vein, noted that "CMS will not pay physician fees for

4    concurrent surgeries."

5              (iii)   Observed that "(t)he stipulations from CMS's COPs and

6    corresponding interpretative guidelines, as well as from CMS's *Medicare Claims Processing*

7    *Manual* had formed the basis of what constituted appropriate practice under Medicare regarding

8    concurrent and overlapping surgeries prior to the publication of the *Boston Globe* article."

9              (iv)    Concluded by expressing its "concerns with respect to the billing of

10   concurrent and overlapping surgeries" and advising the HHS Office of Inspector General to

11   "undertake an evaluation to review the controls in place to ensure that hospitals and physicians are

12   appropriately billing for physician services provided by teaching physicians."

13             (f)     In a Report to the House of Representatives Ways and Means Committee on

14   the subject of Physicians at Teaching Hospitals (PATH) Audits (the "Report"), the General

15   Accounting Office noted that PATH Audits were started as a nationwide initiative after a $30

16   million settlement with the University of Pennsylvania raised concerns about the practice of teaching

17   physicians inappropriately billing Medicare by not adequately documenting their involvement in

18   services provided by residents. The Report:

19             (i)     Noted the critical significance of the teaching physician not only being

20   present but also documenting his or her presence to bill for services performed by residents: "Our

21   analysis indicates that the need for a teaching physician to be physically present to bill for services

22   performed by residents is a longstanding requirement of the Medicare program. The fact that a

23   physical presence requirement has not always been consistently communicated or enforced does not

24   obviate the need for teaching physicians to document their personal involvement in services to

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

legitimately bill Medicare.... If the medical records do not show evidence of the teaching physician's presence, the OIG considers the service to be part of the teaching physician's supervisory functions already paid under part A."

　　　　　　　　　(ii)　　Specifically identified the FCA as "one of the government's primary enforcement tools" to combat health care fraud.

**154.**　　The regulatory scheme in the C.F.R. and MCPM provisions discussed above, and routinely violated by the Defendants, promotes the critically important goal of minimizing the risk that patient safety will be compromised by surgeries performed by less than fully-trained, qualified physicians. This goal would be entirely frustrated if providers and suppliers could perform multiple concurrent surgeries in violation of government rules and regulations - and still be paid.

**155.**　　Indeed, to add force to this scheme, relevant regulations and rules not only proscribe the practice of concurrent surgeries in the circumstances described in this First Amended Complaint, but they preclude payment for such services. *E.g.,* 42 C.F.R. § 415.172; MCPM, Ch. 12 § 100.1.2. Moreover, the claim forms required for payment under government programs warn of both civil and criminal penalties for claims containing false information.[9] To deny the material nature of Defendants' fraud is to ignore the serious consequences of violations of the rules and regulations involved here.

**156.**　　Materiality is also established by the CIA, which is replete with promises intended to assure compliance with all federal health care programs. Indeed, the preamble to the CIA provides that Dignity entered into the agreement for the specific purpose of promoting "compliance with the

---

[9] Form CMS-1450 provides: "THE SUBMITTER OF THIS FORM UNDERSTANDS THAT MISREPRESENTATIONS OR FALSIFICATION OF ESSENTIAL INFORMATION AS REQUESTED BY THIS FORM, MAY SERVE AS THE BASIS FOR CIVIL MONETARY PENALTIES AND ASSESSMENTS AND MAY UPON CONVICTION INCLUDE FINES AND/OR IMPRISONMENT[.]" Similarly, Form CMS-1500 states, "Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

52

statutes, regulations, and written directives of Medicare, Medicaid, and all other Federal health care programs." The purpose of the CIA, as well as its substantive provisions, would be completely frustrated if Dignity could ignore its promises with impunity.

## VII.    REPRESENTATIVE EXAMPLES OF THE FRAUDULENT BILLING SCHEME

157.    Patient medical records conclusively demonstrate that the fraud was knowingly and routinely perpetrated by nearly every BNA teaching surgeon and Dignity Health through multiple Dignity Health nurses, residents, and administrative employees.[10]

158.    At all times referred to in the representative examples below, each Defendant Doctor was acting within the scope of his employment with BNA and with the knowledge and consent of BNA and Dignity Health.

159.    At all times referred to in the representative examples below, each Dignity Health employee, including each nurse, was acting within the scope of his or her employment with Dignity Health and with the knowledge and consent of Dignity Health.

### A.    Representative Examples of the Fraud Involving Three or More Concurrent Surgeries.

160.    The following examples involving three or more concurrent surgeries illustrate the fraud described in paras. 104-113.   In each example, Defendants submitted their false claims, supported by the described false statements and fraudulent omissions, with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false. And in most, if not all, of the examples, Defendants obtained the patient's consent to the surgery through the false and misleading consent forms described in paras. 123-132, above, in violation of 42 C.F.R. § 482.13(b)(2), 2 C.F.R. § 482.24(c)(4)(v), 42 C.F.R. § 482.51(b)(2), CMS State Operations Manual -

---

[10]   Unique numerical designations are used in place of the individual names of the Patients, BNA Teaching Surgeons, Dignity Health Registered Nurses, and Dignity Health Residents.

53

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Appendix A (Rev. 151, 11-20-15), CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.13(b)(2).

(i)    **Examples of Dr. Spetzler's Role in the Fraud (Triple Concurrencies).**

**161.**    On August 15, 2013, Dr. Spetzler performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 1, an AHCCCS beneficiary, came to Dignity Health and BNA with a persistent severe headache and underwent a craniotomy for aneurysm repair, requiring the physician to open Patient's 1 skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 1's brain, and identify, cut out, and clip portions of Patient 1's brain experiencing aneurysm. Dignity Health's Perioperative Record for Patient 1, prepared by Dignity Health's Registered Nurse RN 1, reflects that the surgery was conducted between 09:32 and 13:21; that Dr. Spetzler was present between 08:28 and 14:17; that Dignity Health Resident 1 was present between 08:30 and 14:17; and, that Dignity Health Resident 2 was also present between 08:30 and 14:17. Patient 1 never recovered from this surgery with Dr. Spetzler and was eventually transferred to another hospital for purposes of terminal organ harvest.

(b)    Patient 2, a Medicare beneficiary, underwent a craniotomy to debulk a tumor, requiring the physician to open Patient 2's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 2's brain, and locate and cut out portions of Patient 2's tumor. Dignity Health's Perioperative Record for Patient 2, prepared by Dignity Health's Registered Nurse RN 2, reflects that the surgery was conducted between 09:20 and 12:53; that Dr. Spetzler was present between 07:45 and 13:05; and, that Dignity Health Resident 3 was present between 07:45 and 13:05.

(c)    Patient 3, a private insurance beneficiary, underwent a craniotomy to debulk a tumor, requiring the physician to open Patient 3's skull with a high-speed drill, use a microscope

54

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

to carefully dissect deep into Patient 3's brain, and locate and cut out portions of Patient 3's tumor. Dignity Health's Perioperative Record for Patient 3, prepared by Dignity Health's Registered Nurse RN 3, reflects that the surgery was conducted between 08:41 and 11:24; that Dr. Spetzler was present between 10:00 and 10:45; and, that Dignity Health Fellow 1 was present between 08:05 and 11:29.

(d)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Spetzler's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a).[11] Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)    These Dignity Health Perioperative Records demonstrate that Dr. Spetzler was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 1 and 2 were non-reimbursable and could not be billed to Medicare or Medicaid pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)    Moreover, despite the concurrent surgeries, Dr. Spetzler failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of

---

[11] A teaching surgeon performing multiple concurrent surgeries is not "immediately available." MCPM Ch. 12 § 100.1.2(A) ("During non-critical or non-key portions of the surgery, if the teaching surgeon is not physically present, he/she must be immediately available to return to the procedure, i.e., he/she cannot be performing another procedure") (emphasis added).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

Patients 1 and 2 should the need arise, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

      (g)    Dr. Spetzler also failed to personally document his presence during the critical or key portions of the surgeries of Patients 1 and 2. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

      (h)    The wrongful surgeries could not have been performed by Dr. Spetzler and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Spetzler with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Spetzler would be involved in three concurrent surgeries, that Dr. Spetzler would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Spetzler would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Spetzler, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint). In addition, because Patient 1 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Spetzler were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

      (i)    By making multiple operating rooms available to Dr. Spetzler for the surgical procedures described in this example, and by not requiring a backup surgeon to be

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicaid and Medicare for one or more of the surgeries and related hospitalization of Patients 1 and 2, respectively. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(ii)    **Examples of Dr. Little's Role in the Fraud (Triple Concurrencies).**

**162.**    On September 5, 2013, Dr. Little performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 4, a Medicare and AHCCCS beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 4's vertebrae to expose Patient 4's spine and carefully drill out portions of Patient 4's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 4, prepared by Dignity Health's Registered Nurse RN 4, reflects that the surgery was conducted between 16:09 and 18:19; that Dr. Little was present between 14:49 and 18:24; and, that Dignity Health Resident 4 was also present between 14:49 and 18:24.

(b)    Patient 5, a private insurance beneficiary, also underwent a laminectomy, requiring the physician  to cut open Patient 5's vertebrae to expose Patient 5's spine and carefully

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

drill out portions of Patient 5's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 5, prepared by Dignity Health's Registered Nurse RN 5, reflects that the surgery was conducted between 16:20 and 19:45; that Dr. Little was present between 15:21 and 19:50; and, that Dignity Health Resident 2 was present between 14:30 and 19:50.

(c)      Patient 6, a private insurance beneficiary, underwent a shunt insertion, requiring the physician to cut open Patient 6's abdomen and skull, dissect deep into Patient 6's exposed brain, and tunnel through to Patient 6's abdomen. Dignity Health's Perioperative Record for Patient 6, prepared by Dignity Health's Registered Nurse RN 6, reflects that the surgery was conducted between 15:29 and 16:44; that Dr. Little was present between 14:12 and 16:49; and, that Dignity Health Resident 5 was present between 14:30 and 16:49.

(d)      The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Little's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)      These Dignity Health Perioperative Records demonstrate that Dr. Little was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patient 4 were non-reimbursable and could not be billed to Medicare or

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Medicaid pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)    The wrongful surgeries could not have been performed by Dr. Little and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Little with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Little would be involved in three concurrent surgeries, that Dr. Little would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Little would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Little, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint). In addition, because Patient 4 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Little were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

(g)    By making multiple operating rooms available to Dr. Little for the surgical procedures described in this example, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(h)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicaid and Medicare for the surgery and related

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

59

hospitalization of Patient 4. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(iii)    <b>Examples of Dr. Porter's Role in the Fraud (Triple Concurrencies).</b>

**163.**    On September 19, 2013, Dr. Porter performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 7, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open the vertebrae to expose Patient 7's spine and carefully drill out portions of Patient 7's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 7, prepared by Dignity Health's Registered Nurse RN 7, reflects that the surgery was conducted between 13:45 and 18:42; that Dr. Porter was present between 12:47 and 18:49; and, that Dignity Health Resident 6 was also present between 12:47 and 18:49.

(b)    Patient 8, a private insurance beneficiary, underwent a lumbar fusion, requiring the physician to dissect deep through Patient 8's back to drill into Patient 8's vertebrae to carefully decompress Patient 8's spinal nerves. Dignity Health's Perioperative Record for Patient 8, prepared by Dignity Health's Registered Nurse RN 8, reflects that the surgery was conducted between 15:44 and 19:26; that Dr. Porter was present between 14:28 and 19:40; and, that Dignity Health Resident 2 was also present between 14:28 and 19:40.

(c)    Patient 9, a private insurance beneficiary, underwent a craniectomy and laminectomy, requiring the physician to cut off a portion of Patient 9's skull and dissect deep into

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Patient 9's back using a microscope to carefully grind off portions of Patient 9 ...
Patient 9's spine exposed. Dignity Health's Perioperative Record for Patient 9, prepa...
Dignity Health's Registered Nurse RN 9, reflects that the surgery was conducted between 13:35 and 17:35; that Dr. Porter was present between 12:30 and 17:40; and, that Dignity Health Resident 7 was also present between 12:30 and 17:40.

   (d)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Porter's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

   (e)    These Dignity Health Perioperative Records demonstrate that Dr. Porter was engaged in three concurrent surgeries, and thus the procedure and related hospitalization for Patient 7 was non-reimbursable and could not be billed to Medicare pursuant to MCPM Ch. 12 § 100.1.2(A)(2). and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

   (f)    Moreover, despite the concurrent surgeries, Dr. Porter failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 7, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

61

(g)    Dr. Porter also failed to personally document his presence during the critical or key portions of the surgery of Patient 7. This failure independently rendered the surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(h)    The wrongful surgeries could not have been performed by Dr. Porter and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Porter with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Porter would be involved in three concurrent surgeries, that Dr. Porter would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Porter would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Porter, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(i)    By making multiple operating rooms available to Dr. Porter for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 7. BNA and Dignity Health submitted their bills, knowing that the procedure was

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

62

performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

   (iv) **Examples of Dr. Theodore's Role in the Fraud (Triple Concurrencies).**

  **164.** On August 14, 2013, Dr. Theodore performed three concurrent surgeries in violation of Medicare rules and regulations.

   (a) Patient 10, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open the vertebrae to expose Patient 10's spine and carefully drill out portions of Patient 10's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 10, prepared by Dignity Health's Registered Nurse RN 10, reflects that the surgery was conducted between 09:21 and 14:30; that Dr. Theodore was present between 08:22 and 15:01; and, that Dignity Health Resident 8 was present between 08:22 and 15:01.

   (b) Patient 11, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 11's vertebrae to expose Patient 11's spine and carefully drill out portions of Patient 11's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 11, prepared by Dignity Health's Registered Nurse RN 11, reflects that the surgery was conducted between 9:34 and 15:31; that Dr. Theodore was present between 08:22 and 15:27; and, that Dignity Health Resident 9 was also present between 08:22 and 15:27.

   (c) Patient 12, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 12's vertebrae to expose Patient 12's spine and carefully drill out portions of Patient 12's bone to relieve pressure. Dignity Health's Perioperative Record for Patient

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

1   12, prepared by Dignity Health's Registered Nurse RN 2, reflects that the surgery was conducted

2   between 09:21 and 12:14; that Dr. Theodore was present between 08:34 and 12:22; and, that Dignity

3   Health Resident 2 was also present between 08:34 and 12:22.

4          (d)    The Dignity Health Perioperative Records for the above Patients, prepared

5   by Dignity Health nurses, conflictingly and falsely report Dr. Theodore's presence in three different

6   locations at the same time–a physical impossibility and a violation of the teaching surgeon's

7   obligation to be "immediately available to furnish services during the entire service or procedure."

8   42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching

9   surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are

10  compared against one another, as the above analysis demonstrates. The preparation and submission

11  of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b),

12  which require the medical records to "document the teaching physician was present at the time the

13  service is furnished."

14         (e)    These Dignity Health Perioperative Records demonstrate that Dr. Theodore

15  was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and

16  related hospitalization for Patients 10, 11, and 12 were non-reimbursable and could not be billed to

17  Medicare pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix

18  A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

19         (f)    Moreover, despite the concurrent surgeries, Dr. Theodore failed to arrange

20  for a backup surgeon to be available to immediately assist the Resident performing the surgeries of

21  Patients 10, 11, and 12, a knowing violation of Medicare rules. This failure independently rendered

22  these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

23         (g)    The wrongful surgeries could not have been performed by Dr. Theodore and

24  billed to the United States without the active assistance and knowingly wrongful involvement of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

64

Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Theodore with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Theodore would be involved in three concurrent surgeries, that Dr. Theodore would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Theodore would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Theodore, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)    By making multiple operating rooms available to Dr. Theodore for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))   and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or more of the surgeries and related hospitalization of Patients 10, 11, and 12. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

   (v)  **Examples of Dr. Theodore's Additional Role in the Fraud (Triple Concurrencies).**

  **165.**  On January 27, 2014, Dr. Theodore performed three concurrent surgeries in violation of Medicare rules and regulations.

   (a)  Patient 13, a Medicare beneficiary, underwent a lumbar fusion, requiring the physician to dissect deep through Patient 13's back to drill into Patient 13's vertebrae to carefully decompress Patient 13's spinal nerves. Dignity Health's Perioperative Record for Patient 13, prepared by Dignity Health's Registered Nurse RN 12, reflects that the surgery was conducted between 08:48 and 11:53; that Dr. Theodore was present between 07:48 and 12:03; and, that Dignity Health Resident 10 was also present between 07:48 and 12:03.

   (b)  Patient 14, a Medicare beneficiary, underwent a lumbar fusion, requiring the physician to dissect deep through Patient 14's back to drill into Patient 14's vertebrae to carefully decompress Patient 14's spinal nerves. Dignity Health's Perioperative Record for Patient 14, prepared by Dignity Health's Registered Nurse RN 13, reflects that the surgery was conducted between 08:46 and 13:11; that Dr. Theodore was present between 07:45 and 13:19; and, that Dignity Health Resident 2 was also present between 07:45 and 13:19.

   (c)  Patient 15, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 15's vertebrae to expose Patient 15's spine and carefully drill out portions of Patient 15's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 15, prepared by Dignity Health's Registered Nurse RN 14, reflects that the surgery was conducted between 08:56 and 11:18; that Dr. Theodore was present between 09:28 and 11:24; that Dignity Health Resident 11 was present between 08:16 and 10:24; and, that Dignity Health Resident 12 was also present between 10:21 and 11:34.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(d)      The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Theodore's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)      These Dignity Health Perioperative Records demonstrate that Dr. Theodore was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 13, 14, and 15 were non-reimbursable and could not be billed to Medicare pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)      Moreover, despite the concurrent surgeries, Dr. Theodore failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 13, 14, and 15, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)      The wrongful surgeries could not have been performed by Dr. Theodore and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Theodore with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining

67

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Theodore would be involved in three concurrent surgeries, that Dr. Theodore would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Theodore would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Theodore, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)     By making multiple operating rooms available to Dr. Theodore for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)     Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or more of the surgeries and related hospitalization of Patients 13, 14, and 15. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

68

### (vi)  Examples of Dr. Barranco's Role in the Fraud (Triple Concurrencies)

166.  On September 25, 2013, Dr. Barranco performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)  Patient 16, a Medicare beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 16's back, dissect down to Patient 16's spine, cut through Patient 16's vertebrae, and use a microscope to carefully drill off portions of Patient 16's vertebrae with Patient 16's spine exposed. Dignity Health's Perioperative Record for Patient 16, prepared by Dignity Health's Registered Nurse RN 15, reflects that the surgery was conducted between 11:21 and 14:28; that Dr. Barranco was present between 10:30 and 14:43; and, that Dignity Health Resident 2 was also present between 10:30 and 14:43.

(b)  Patient 17, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 17's vertebrae to expose Patient 17's spine and carefully drill out portions of Patient 17's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 17, prepared by Dignity Health's Registered Nurse RN 16, reflects that the surgery was conducted between 10:07 and 15:55; that Dr. Barranco was present between 09:30 and 16:05; and, that Dignity Health Resident 3 was present between 09:00 and 16:05.

(c)  Patient 18, a private insurance beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 18's back, dissect down to Patient 18's spine, cut through Patient 18's vertebrae, and use a microscope to carefully drill off portions of Patient 18's vertebrae with Patient 18's spine exposed. Dignity Health's Perioperative Record for Patient 18, prepared by Dignity Health's Registered Nurse RN 17, reflects that the surgery was conducted between 08:36 and 11:29; that Dr. Barranco was present between 07:40 and 11:43; and, that Dignity Health Resident 7 was also present between 07:40 and 11:43.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(d)     The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Barranco's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)     These Dignity Health Perioperative Records demonstrate that Dr. Barranco was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 16 and 17 were non-reimbursable and could not be billed to Medicare pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)     Moreover, despite the concurrent surgeries, Dr. Barranco failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 16 and 17, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)     Dr. Barranco also failed to personally document his presence during the critical or key portions of the surgery of Patient 16. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(h)     The wrongful surgeries could not have been performed by Dr. Barranco and billed to the United States without the active assistance and knowingly wrongful involvement of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Barranco with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Barranco would be involved in three concurrent surgeries, that Dr. Barranco would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Barranco would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Barranco, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(i)     By making multiple operating rooms available to Dr. Barranco for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)     Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or both of the surgeries and related hospitalization of Patients 16 and 17. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

71

1    falsely certified that they complied with all Medicare "laws, regulations and program instructions"

2    and that their submissions were "true, accurate and complete."

3        (vii)    **Examples of Dr. Kakarla's Role in the Fraud (Triple Concurrencies).**

4    **167.**    On April 2, 2014, Dr. Kakarla performed three concurrent surgeries in violation of

5    Medicare rules and regulations.

6

7        (a)    Patient 19, a Medicare beneficiary, underwent a laminectomy, requiring the

8    physician to cut open Patient 19's vertebrae to expose Patient 19's spine and carefully drill out

9    portions of Patient 19's bone to relieve pressure. Dignity Health's Perioperative Record for Patient

10   19, prepared by Dignity Health's Registered Nurse RN 7, reflects that the surgery was conducted

11   between 09:15 and 17:15; that Dr. Kakarla was present between 07:35 and 17:20; and, that Dignity

12   Health Resident 10 was present between 08:35 and 17:20. In the Operative Report for Patient 19,

13   Dr. Kakarla dictated: "I was present during the entire procedure."

14

15       (b)    Patient 20, a Medicare beneficiary, underwent a corpectomy, requiring the

16   physician to cut open Patient 20's back, dissect deep to expose Patient 20's spine, and carefully

17   drill out and remove portions of Patient 20's vertebrae to relieve pressure. Dignity Health's

18   Perioperative Record for Patient 20, prepared by Dignity Health's Registered Nurse RN 18,

19   reflects that the surgery was conducted between 11:33 and 16:31; that Dr. Kakarla was present

20   between 15:14 and 16:36; and, that Dignity Health Resident 13 was present between 09:52 and

21   16:36.

22

23       (c)    Patient 21, an AHCCCS beneficiary, underwent a laminectomy, requiring

24   the physician to cut open Patient 21's vertebrae to expose Patient 21's spine and carefully drill out

25   portions of Patient 21's bone to relieve pressure. Dignity Health's Perioperative Record for Patient

26   21, prepared by Dignity Health's Registered Nurse RN 8, reflects that the surgery was conducted

27

28

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

72

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

between 15:50 and 18:32; that Dr. Kakarla was present between 14:26 and 18:38; and, that Dignity Health Resident 9 was present between 15:00 and 18:38.

(d)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Kakarla's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)    These Dignity Health Perioperative Records demonstrate that Dr. Kakarla was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 19, 20, and 21 were non-reimbursable and could not be billed to Medicare or Medicaid pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)    Moreover, despite the concurrent surgeries, Dr. Kakarla failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 19 and 21, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(g)     Dr. Kakarla also failed to personally document his presence during the critical or key portions of the surgery of Patient 21. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(h)     The wrongful surgeries could not have been performed by Dr. Kakarla and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Kakarla with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Kakarla would be involved in three concurrent surgeries, that Dr. Kakarla would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Kakarla would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Kakarla, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(i)     By making multiple operating rooms available to Dr. Kakarla for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)     Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or both of the surgeries and related hospitalization of Patients 19 and 20, and billed Medicaid for the surgery of Patient 21. BNA and

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete." In addition, because Patient 21 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Kakarla were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

(viii)    **Examples of Dr. Sanai's Role in the Fraud (Triple Concurrencies).**

**168.**    On February 6, 2014, Dr. Sanai performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 22, a Medicare beneficiary, underwent a shunt revision, requiring the physician to cut through Patient 22's skull and dissect deep into Patient 22's brain to identify, extract, and replace an artificial valve in Patient 22's brain. Dignity Health's Perioperative Record for Patient 22, prepared by Dignity Health's Registered Nurse RN 13, reflects that the surgery was conducted between 08:52 and 09:36; that Dr. Sanai was present between 07:59 and 09:45; and, that Dignity Health Resident 5 was also present between 07:59 and 09:45.

(b)    Patient 23, a Medicare beneficiary, underwent a craniotomy, requiring the physician to open Patient 23's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 23's brain, and locate and cut out portions of Patient 23's tumor. Dignity Health's Perioperative Record for Patient 23, prepared by Dignity Health's Registered Nurse RN 4, reflects

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

75

1   that the surgery was conducted between 09:26 and 19:24; that Dr. Sanai was present between

2   07:46 and 19:32; and, that Dignity Health Resident 14 was also present between 07:46 and 19:32.

3           (c)    Patient 24, a private insurance beneficiary, underwent a craniotomy,

4   requiring the physician to open Patient 24's skull with a high-speed drill, use a microscope to

5   carefully dissect deep into Patient 24's brain, and locate and cut out portions of Patient 24's tumor.

6   Dignity Health's Perioperative Record for Patient 24, prepared by Dignity Health's Registered

7   Nurse RN 14, reflects that the surgery was conducted between 08:43 and 10:37; that Dr. Sanai was

8   present between 09:03 and 10:52; and, that Dignity Health Resident 1 was present between 07:57

9   and 10:52.

10          (d)    The Dignity Health Perioperative Records for the above Patients, prepared

11  by Dignity Health nurses, conflictingly and falsely report Dr. Sanai's presence in three different

12  locations at the same time–a physical impossibility and a violation of the teaching surgeon's

13  obligation to be "immediately available to furnish services during the entire service or procedure."

14  42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching

15  surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are

16  compared against one another, as the above analysis demonstrates. The preparation and submission

17  of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b),

18  which require the medical records to "document the teaching physician was present at the time the

19  service is furnished."

20          (e)    These Dignity Health Perioperative Records demonstrate that Dr. Sanai was

21  engaged in three concurrent surgeries without the patients' consent, and thus the procedures and

22  related hospitalization for Patients 22 and 23 were non-reimbursable and could not be billed to

23  Medicare pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual -

24  Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(f)      Moreover, despite the concurrent surgeries, Dr. Sanai failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 22 and 23, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)      The wrongful surgeries could not have been performed by Dr. Sanai and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Sanai with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Sanai would be involved in three concurrent surgeries, that Dr. Sanai would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Sanai would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Sanai, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)      By making multiple operating rooms available to Dr. Sanai for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)      Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or both of the surgeries and related

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

hospitalization of Patients 22 and 23. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(ix)    **Examples of Dr. Nakaji's Role in the Fraud (Triple Concurrencies).**

**169.**    On September 18, 2013, Dr. Nakaji performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 25, a Medicare beneficiary, underwent a craniotomy, requiring the physician to open Patient 25's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 25's brain, and locate and remove Patient 25's tumor. Dignity Health's Perioperative Record for Patient 25, prepared by Dignity Health's Registered Nurse RN 1, reflects that the surgery was conducted between 09:35 and 14:53; that Dr. Nakaji was present between 08:28 and 14:59; that Dignity Health Resident 1 was present between 08:45 and 14:49; and, that Dignity Health Resident 2 was also present between 08:45 and 12:50.

(b)    Patient 26, an AHCCCS beneficiary, underwent a craniotomy cyst fenestration, requiring the physician to open Patient 26's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 26's brain, and locate and cut out portions of a cyst in Patient 26's brain. Dignity Health's Perioperative Record for Patient 26, prepared by Dignity Health's Registered Nurse RN 12, reflects that the surgery was conducted between 11:54 and 13:54; that Dr. Nakaji was present between 10:08 and 14:01; and, that Dignity Health Resident 6 was also present between 10:08 and 14:01.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(c)    Patient 27, a private insurance beneficiary, underwent a craniotomy aneurysm repair, requiring the physician to open Patient 27's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 27's brain, and identify, cut out, and clip portions of Patient 27's brain experiencing aneurysm. Dignity Health's Perioperative Record for Patient 27, prepared by Dignity Health's Registered Nurse RN 19, reflects that the surgery was conducted between 09:40 and 18:15; that Dr. Nakaji was present between 07:42 and 18:30; and, that Dignity Health Resident 15 was also present between 07:42 and 18:30.

(d)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Nakaji's presence in three different locations at the same time—a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health—unrebutted by the BNA teaching surgeons—enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)    These Dignity Health Perioperative Records demonstrate that Dr. Nakaji was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 25 and 26 were non-reimbursable and could not be billed to Medicare or Medicaid pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)    Moreover, despite the concurrent surgeries, Dr. Nakaji failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Patients 25 and 26, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    Dr. Nakaji also failed to personally document his presence during the critical or key portions of the surgeries of Patients 25 and 26. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(h)    The wrongful surgeries could not have been performed by Dr. Nakaji and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Nakaji with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Nakaji would be involved in three concurrent surgeries, that Dr. Nakaji would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Nakaji would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Nakaji, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint). In addition, because Patient 26 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Nakaji were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

(i)    By making multiple operating rooms available to Dr. Nakaji for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare and Medicaid for one or both of the surgeries and related hospitalization of Patients 25 and 26, respectively. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(x)    **Examples of Dr. Smith's Role in the Fraud (Quadruple Concurrencies).**

**170.**    On September 18, 2013, Dr. Smith performed four concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 28, a Medicare beneficiary, underwent a craniotomy to decompress a nerve, requiring the physician to open Patient 28's back and skull, split Patient 28's muscles, use a microscope and wand navigation to locate a compressed nerve in Patient 28's brain, and carefully adjust placement of a vein to relieve pressure. Dignity Health's Perioperative Record for Patient 28, prepared by Dignity Health's Registered Nurse RN 20, reflects that the surgery was conducted between 12:30 and 15:35; that Dr. Smith was present between 11:30 and 15:40; and, that Dignity Health Resident 13 was also present between 11:30 and 15:40.

(b)    Patient 29, a Medicare beneficiary, underwent a craniotomy, requiring the physician to open Patient 29's skull with a high-speed drill, use a microscope to carefully dissect

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

deep into Patient 29's brain, and locate and cut out portions of Patient 29's tumor. Dignity Health's Perioperative Record for Patient 29, prepared by Dignity Health's Registered Nurse RN 4, reflects that the surgery was conducted between 15:19 and 19:49; that Dr. Smith was present between 14:00 and 19:56; and, that Dignity Health Resident 6 was also present between 14:00 and 19:56.

(c)    Patient 30, a Medicare beneficiary, underwent a ventriculo-peritoneal shunt insertion, requiring the physician to cut open Patient 30's abdomen and skull, dissect deep into Patient 30's exposed brain, and tunnel through to Patient 30's abdomen. Dignity Health's Perioperative Record for Patient 30, prepared by Dignity Health's Registered Nurse RN 7, reflects that the surgery was conducted between 12:49 and 13:48; that Dr. Smith was present between 11:42 to 13:54; and, that Dignity Health Resident 6 was also present between 11:42 and 13:54.

(d)    Patient 31, a private insurance beneficiary, underwent a ventriculo-peritoneal shunt insertion, requiring the physician to cut open Patient 31's abdomen and skull, dissect deep into Patient 31's exposed brain, and tunnel through to Patient 31's abdomen. Dignity Health's Perioperative Record for Patient 31, prepared by Dignity Health's Registered Nurse RN 3, reflects that the surgery was conducted between 13:19 and 14:58; that Dr. Smith was present between 12:09 and 15:05; and, that Dignity Health Resident 16 was also present between 12:09 and 15:05.

(e)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Smith's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(f)     These Dignity Health Perioperative Records demonstrate that Dr. Smith was engaged in four concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 28, 29, and 30 were non-reimbursable and could not be billed to Medicare pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(g)     Moreover, despite the concurrent surgeries, Dr. Smith failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 28, 29, and 30, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(h)     Dr. Smith also failed to personally document his presence during the critical or key portions of the surgeries of Patients 28, 29, and 30. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(i)     The wrongful surgeries could not have been performed by Dr. Smith and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Smith with access to four ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Smith would be involved in four concurrent surgeries, that Dr. Smith would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Smith would be present to

83

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

provide "guidance and/or supervision" to residents assigned to assist Dr. Smith, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(j)    By making multiple operating rooms available to Dr. Smith for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(k)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or more of the surgeries and related hospitalization of Patients 28, 29, and 30. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(xi)    **Examples of Dr. Kaibara's Role in the Fraud (Triple Concurrencies).**

171.    On October 21, 2014, Dr. Kaibara performed three concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 32, a Medicare beneficiary, underwent a lumbar fusion, requiring the physician to dissect deep through Patient 32's back and drill into Patient 32's vertebrae to carefully decompress Patient 32's spinal nerves. Dignity Health's Perioperative Record for Patient 32,

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

prepared by Dignity Health's Registered Nurse RN 21, reflects that the surgery was conducted between 13:35 and 17:15; that Dr. Kaibara was present between 12:30 and 17:20; and, that Dignity Health Resident 17 was also present between 12:30 and 17:20.

(b)     Patient 33, an AHCCCS Medicaid beneficiary, underwent an Ommaya Reservoir insertion, requiring the physician to cut open Patient 33's skull with a high-speed drill, use an operating microscope to carefully cut through portions of Patient 33's brain, and insert a catheter deep in Patient 33's brain to collect cerebrospinal fluid. Dignity Health's Perioperative Record for Patient 33, prepared by Dignity Health's Registered Nurse RN 12, reflects that the surgery was conducted between 13:17 and 13:51; that Dr. Kaibara was present between 12:41 and 14:11; and, that Dignity Health Resident 18 was also present between 12:41 and 14:11.

(c)     Patient 34, a private insurance beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 34's vertebrae to expose Patient 34's spine and carefully drill out portions of Patient 34's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 34, prepared by Dignity Health's Registered Nurse RN 14, reflects that the surgery was conducted between 12:29 and 14:52; that Dr. Kaibara was present between 11:34 and 14:58; and, that Dignity Health Resident 5 was present between 11:50 and 14:58.

(d)     The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Kaibara's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b),

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

1   which require the medical records to "document the teaching physician was present at the time the

2   service is furnished."

3           (e)     These Dignity Health Perioperative Records demonstrate that Dr. Kaibara

4   was engaged in three concurrent surgeries without the patients' consent, and thus the procedures

5   and related hospitalization for Patients 32 and 33 were non-reimbursable and could not be billed to

6   Medicare or Medicaid pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations

7   Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

8           (f)     Moreover, despite the concurrent surgeries, Dr. Kaibara failed to arrange for

9   a backup surgeon to be available to immediately assist the Resident performing the surgery of

10  Patient 33, a knowing violation of Medicare rules. This failure independently rendered this

11  concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

12          (g)     Dr. Kaibara also failed to personally document his presence during the

13  critical or key portions of the surgeries of Patients 32 and 33. This failure independently rendered

14  these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

15          (h)     The wrongful surgeries could not have been performed by Dr. Kaibara and

16  billed to the United States without the active assistance and knowingly wrongful involvement of

17  Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr.

18  Kaibara with access to three ORs simultaneously, each of which was staffed with Dignity Health

19  employees, including nurses who falsified medical records, as described above, and (ii) obtaining

20  each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Kaibara

21  would be involved in three concurrent surgeries, that Dr. Kaibara would not be present throughout

22  the entirety of the patient's procedure, and that unsupervised residents would perform portions of

23  the patient's surgery, while fraudulently informing each patient that Dr. Kaibara would be present

24  to provide "guidance and/or supervision" to residents assigned to assist Dr. Kaibara, all in

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(i)    By making multiple operating rooms available to Dr. Kaibara for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare and AHCCCS for one or both of the surgeries and related hospitalization of Patients 32 and 33, respectively. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete." In addition, because Patient 33 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Kaibara were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

(xii)   **Examples of Dr. Chang's Role in the Fraud (Triple Concurrencies).**

**172.**    On September 19, 2013, Dr. Chang performed three concurrent surgeries in violation of Medicare rules and regulations.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(a)    Patient 35, a Medicaid beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 35's back, dissect down to Patient 35's spine, cut through Patient 35's vertebrae, and use a microscope to carefully drill off portions of Patient 35's vertebrae with Patient 35's spine exposed. Dignity Health's Perioperative Record for Patient 35, prepared by Dignity Health's Registered Nurse RN 3, reflects that the surgery was conducted between 10:20 and 15:46; that Dr. Chang was present between 08:50 and 16:00; and, that Dignity Health Resident 19 was also present between 08:50 and 16:00.

(b)    Patient 36, a TRICARE beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 36's vertebrae to expose Patient 36's spine and carefully drill out portions of Patient 36's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 36, prepared by Dignity Health's Registered Nurse RN 18, reflects that the surgery was conducted between 08:57 and 12:21; that Dr. Chang was present between 07:46 and 12:28; and, that Dignity Health Resident 7 was also present between 07:46 and 12:28.

(c)    Patient 37, a private insurance beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 37's back, dissect down to Patient 37's spine, cut through Patient 37's vertebrae, and use a microscope to carefully drill off portions of Patient 37's vertebrae with Patient 37's spine exposed. Dignity Health's Perioperative Record for Patient 37, prepared by Dignity Health's Registered Nurse RN 19, reflects that the surgery was conducted between 08:48 and 11:01; that Dr. Chang was present between 07:51 and 11:10; and, that Dignity Health Resident 17 was also present between 07:51 and 11:10.

(d)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Chang's presence in three different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure."

88

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against one another, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(e)    These Dignity Health Perioperative Records demonstrate that Dr. Chang was engaged in three concurrent surgeries without the patients' consent, and thus the procedures and related hospitalization for Patients 35 and 36 were non-reimbursable and could not be billed to Medicaid or TRICARE pursuant to MCPM Ch. 12 § 100.1.2(A)(2) and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(f)    Moreover, despite the concurrent surgeries, Dr. Chang failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 36, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    Dr. Chang also failed to personally document his presence during the critical or key portions of the surgeries of Patients 35 and 36. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(h)    The wrongful surgeries could not have been performed by Dr. Chang and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Chang with access to three ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Chang

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

would be involved in three concurrent surgeries, that Dr. Chang would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Chang would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Chang, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(i)    By making multiple operating rooms available to Dr. Chang for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(j)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicaid and TRICARE for the surgeries and related hospitalization of Patients 35 and 36. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

**B.    Representative Examples of the Fraud Involving Two Concurrent Surgeries.**

**173.**    The following examples involving two concurrent surgeries illustrate the fraud described in paras. 81-103, which are incorporated herein by reference. In each example, Defendants

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

submitted their false claims, supported by the described false statements and fraudulent omissions, with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false. And in most, if not all, of the examples, Defendants obtained the patient's consent to the surgery through the false and misleading consent forms described in paras. 123-132, in violation of 42 C.F.R. § 482.13(b)(2), 2 C.F.R. § 482.24(c)(4)(v), 42 C.F.R. § 482.51(b)(2), CMS State Operations Manual - Appendix A (Rev. 151, 11-20-15), CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.13(b)(2).

       (i)     **Examples of Dr. Chang's Role in the Fraud (Double Concurrencies).**

**174.**    On August 14, 2013, Dr. Chang performed two concurrent surgeries in violation of Medicare rules and regulations.

       (a)     Patient 38, a VA Fee Service beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 38's back, dissect down to Patient 38's spine, cut through Patient 38's vertebrae, and use a microscope to carefully drill off portions of Patient 38's vertebrae with Patient 38's spine exposed. Dignity Health's Perioperative Record for Patient 38, prepared by Dignity Health's Registered Nurse RN 4, reflects that the surgery was conducted between 14:58 and 17:24; that Dr. Chang was present between 13:56 and 17:30; and, that Dignity Health Resident 16 was also present between 13:56 and 17:30. Notably, the Operative Report prepared by Dignity Health Resident 16 (and signed electronically by Dr. Chang) states: "[Dr. Chang] was present for all portions of the case ... [Dr. Chang] was present for all portions of the case and there were no complications."

       (b)     Patient 39, a private insurance beneficiary, underwent a craniotomy tumor resection, requiring the physician to open Patient 39's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 39's brain, and locate and cut out portions of Patient 39's tumor. Dignity Health's Perioperative Record for Patient 39, prepared by Dignity

91

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

Health's Registered Nurse RN 3, reflects that the surgery was conducted between 15:01 and 17:58; that Dr. Chang was present between 13:48 and 18:03; and, that Dignity Health Resident 3 was present between 14:15 and 18:03. Notably, Dr. Chang dictated in the Operative Report: "The attending physician was present for the duration of the procedure."

(c)     The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Chang's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). The Operative Reports also claim that Dr. Chang was in different places at the same exact time. Such false statements by Dignity Health and BNA enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)     These Dignity Health Perioperative Records demonstrate that Dr. Chang was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)     Despite the concurrent surgeries, Dr. Chang failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 38, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)     Dr. Chang also failed to personally document his presence during the critical or key portions of the surgery of Patient 38. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

92

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(g)    The wrongful surgeries could not have been performed by Dr. Chang and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Chang with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Chang would be involved in two concurrent surgeries, that Dr. Chang would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Chang would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Chang, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)    By making multiple operating rooms available to Dr. Chang for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed the government for the surgery and related hospitalization of Patient 38. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

  (ii) **Examples of Dr. Kakarla's Role in the Fraud (Double Concurrencies).**

 **175.** On September 10, 2013, Dr. Kakarla performed two concurrent surgeries in violation of Medicare rules and regulations.

  (a) Patient 40, a Medicare and TRICARE beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 40's vertebrae to expose Patient 40's spine and carefully drill out portions of Patient 40's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 40, prepared by Dignity Health's Registered Nurse RN 15, reflects that the surgery was conducted between 09:36 and 12:24; that Dr. Kakarla was present between 08:39 and 12:32; and, that Dignity Health Resident 11 was present between 09:05 and 12:32.

  (b) Patient 41, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 41's vertebrae to expose Patient 41's spine and carefully drill out portions of Patient 41's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 41, prepared by Dignity Health's Registered Nurse RN 13, reflects that the surgery was conducted between 09:18 and 10:44; that Dr. Kakarla was present between 08:32 and 11:14; and, that Dignity Health Resident 1 was also present between 08:32 and 11:14. In the Operative Report for Patient 41, Dr. Kakarla dictated: "I was present for the entire procedure."

  (c) The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Kakarla's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure."

94

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Kakarla was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Kakarla failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 40 and 41, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    Dr. Kakarla also failed to personally document his presence during the critical or key portions of the surgery of Patient 40. This failure independently rendered that surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Kakarla and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Kakarla with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Kakarla would be involved in two concurrent surgeries, that Dr. Kakarla would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

the patient's surgery, while fraudulently informing each patient that Dr. Kakarla would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Kakarla, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)    By making multiple operating rooms available to Dr. Kakarla for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))    and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or both of the surgeries and related hospitalization of Patients 40 and 41. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(iii)    **Examples of Dr. Smith's Role in the Fraud (Double Concurrencies).**

**176.**    On May 21, 2014, Dr. Smith performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 42, a Medicare beneficiary, underwent a deep brain stimulator replacement, requiring the physician to remove a portion of Patient 42's skull, carefully implant

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

electrodes deep into Patient 42's brain with Patient 42's brain exposed, and tunnel through Patient 42's brain to connect the electrodes with wiring. Dignity Health's Perioperative Record for Patient 42, prepared by Dignity Health's Registered Nurse RN 3, reflects that the surgery was conducted between 10:35 and 16:56; that Dr. Smith was present between 11:00 and 17:05; that Dignity Health Resident 20 was present between 10:25 and 17:05; and, that Dignity Health Resident 21 was also present between 10:30 and 13:45.

(b)    Patient 43, a private insurance beneficiary, underwent a craniotomy tumor resection, requiring the physician to open Patient 43's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 43's brain, and locate and cut out portions of Patient 43's tumor. Dignity Health's Perioperative Record for Patient 43, prepared by Dignity Health's Registered Nurse RN 9, reflects that the surgery was conducted between 14:28 and 16:58; that Dr. Smith was present between 12:14 and 17:17; and, that Dignity Health Resident 2 was also present between 12:14 and 17:17.

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Smith's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Smith was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Smith failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 42, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    BNA Dr. Smith also failed to personally document his presence during the critical or key portions of the surgery of Patient 42. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Smith and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Smith with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Smith would be involved in two concurrent surgeries, that Dr. Smith would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Smith would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Smith, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(h)    By making multiple operating rooms available to Dr. Smith for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 42. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(iv)    **Examples of Dr. Little's Role in the Fraud (Double Concurrencies).**

177.    On May 22, 2014, Dr. Little performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 44, a Medicare beneficiary, underwent a lumbar fusion, requiring the physician to dissect deep through Patient 44's back and drill into Patient 44's vertebrae to carefully decompress Patient 44's spinal nerves. Dignity Health's Perioperative Record for Patient 44, prepared by Dignity Health's Registered Nurse RN 9, reflects that the surgery was conducted between 13:36 and 14:56; that Dr. Little was present between 12:47 and 15:07; and, that Dignity Health Resident 13 was present between 12:00 and 15:07.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(b)    Patient 45, a private insurance beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 45's vertebrae to expose Patient 45's spine and carefully drill out portions of Patient 45's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 45, prepared by Dignity Health's Registered Nurse RN 4, reflects that the surgery was conducted between 14:14 and 17:08; that Dr. Little was present between 13:16 and 17:27; and, that Dignity Health Resident 15 was also present between 13:16 and 17:27.

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Little's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Little was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Little failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 44, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

100

(f)    Dr. Little also failed to personally document his presence during the critical or key portions of the surgery of Patient 44. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Little and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Little with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Little would be involved in two concurrent surgeries, that Dr. Little would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Little would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Little, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)    By making multiple operating rooms available to Dr. Little for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 44. BNA and Dignity Health submitted their bills, knowing that the procedure was

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

101

performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(v)    **Examples of Dr. Shetter's Role in the Fraud (Double Concurrencies).**

178.    On September 26, 2013, Dr. Shetter performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 46, a Medicare beneficiary, underwent insertion of a pain pump, requiring the physician to open Patient 46's back, puncture Patient 46's spine with a needle, thread a catheter through the needle into Patient 46's spinal canal, and use x-ray techniques to carefully place the catheter while tunneling through to Patient 46's exposed abdomen to connect a pump. Dignity Health's Perioperative Record for Patient 46, prepared by Dignity Health's Registered Nurse RN 18, reflects that the surgery was conducted between 08:24 and 10:00; that Dr. Shetter was present between 07:32 and 10:15; and, that Dignity Health Resident 22 was also present between 07:32 and 10:15.

(b)    Patient 47, a Medicare and AHCCCS beneficiary, underwent a neurogenerator replacement, requiring the physician to cut open Patient 47's neck, dissect deep into Patient 47's body to expose and remove an existing device, and implant a new device with a screwdriver. Dignity Health's Perioperative Record for Patient 47, prepared by Dignity Health's Registered Nurse RN 13, reflects that the surgery was conducted between 08:11 and 08:51; that Dr. Shetter was present between 07:30 and 08:57; and, that Dignity Health Resident 16 was also present between 07:30 and 08:57.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Shetter's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Shetter was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Shetter failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 46 and 47, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    Dr. Shetter also failed to personally document his presence during the critical or key portions of the surgeries of Patients 46 and 47. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Shetter and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Shetter with access to two ORs simultaneously, each of which was staffed with Dignity Health

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Shetter would be involved in two concurrent surgeries, that Dr. Shetter would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Shetter would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Shetter, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)     By making multiple operating rooms available to Dr. Shetter for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)     Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or more of the surgeries and related hospitalization of Patients 46 and 47. BNA and Dignity Health submitted their bills, knowing that the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete." In addition, because Patient 47 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Shetter were duty-bound under 36 ARS §

104

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

        (vi)    **Examples of Dr. Theodore's Role in the Fraud (Double Concurrencies).**

    **179.**    On September 18, 2013, Dr. Theodore performed two concurrent surgeries in violation of Medicare rules and regulations.

        (a)    Patient 48, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open the vertebrae to expose Patient 48's spine and carefully drill out portions of Patient 48's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 48, prepared by Dignity Health's Registered Nurse RN 22, reflects that the surgery was conducted between 10:59 and 13:25; that Dr. Theodore was present between 08:32 and 13:31; and, that Dignity Health Resident 9 was also present between 08:32 and 13:31.

        (b)    Patient 49, a private insurance beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 49's back, dissect down to Patient 49's spine, cut through Patient 49's vertebrae, and use a microscope to carefully drill off portions of Patient 49's vertebrae with Patient 49's spine exposed. Dignity Health's Perioperative Record for Patient 49, prepared by Dignity Health's Registered Nurse RN 18, reflects that the surgery was conducted between 12:41 and 14:42; that Dr. Theodore was present between 11:53 and 14:55; and, that Dignity Health Resident 8 was also present between 11:53 and 14:55.

        (c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Theodore's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Theodore was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Theodore failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 48, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    The wrongful surgeries could not have been performed by Dr. Theodore and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Theodore with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Theodore would be involved in two concurrent surgeries, that Dr. Theodore would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Theodore would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Theodore, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

106

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(g)    By making multiple operating rooms available to Dr. Theodore for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(h)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 48. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(vii)    **Examples of Dr. Porter's Role in the Fraud (Double Concurrencies).**

**180.**    On August 20, 2013, Dr. Porter performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 50, a Medicare beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 50's vertebrae to expose the spine and carefully drill out portions of Patient 50's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 50, prepared by Dignity Health's Registered Nurse RN 23, reflects that the surgery was conducted between 09:36 and 14:20; that Dr. Porter was present between 08:07 and 14:24; and, that Dignity Health Resident 23 was also present between 08:07 and 14:24.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(b)     Patient 51, a Medicare beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 51's back, dissect down to Patient 51's spine, cut through Patient 51's vertebrae, and use a microscope to carefully drill off portions of Patient 51's vertebrae with Patient 51's spine exposed. Dignity Health's Perioperative Record for Patient 51, prepared by Dignity Health's Registered Nurse RN 3, reflects that the surgery was conducted between 13:09 and 14:31; that Dr. Porter was present between 12:22 and 14:42; and, that Dignity Health Resident 22 was also present between 12:22 and 14:42.

(c)     The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Porter's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)     These Dignity Health Perioperative Records demonstrate that Dr. Porter was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)     Despite the concurrent surgeries, Dr. Porter failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgeries of Patients 50 and 51, a knowing violation of Medicare rules. This failure independently rendered these concurrent surgeries non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(f)    Dr. Porter also failed to personally document his presence during the critical or key portions of the surgery of Patient 50. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Porter and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Porter with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Porter would be involved in two concurrent surgeries, that Dr. Porter would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Porter would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Porter, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(h)    By making multiple operating rooms available to Dr. Porter for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for one or both of the surgeries and related hospitalization of Patients 50 and 51. BNA and Dignity Health submitted their bills, knowing that

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

the procedures were performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(viii)    **Examples of Dr. Barranco's Role in the Fraud (Double Concurrencies).**

**181.**    On September 10, 2013, Dr. Barranco performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 52, a Medicare beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 52's back, dissect down to Patient 52's spine, cut through Patient 52's vertebrae, and use a microscope to carefully drill off portions of Patient 52's vertebrae with Patient 52's spine exposed. Dignity Health's Perioperative Record for Patient 52, prepared by Dignity Health's Registered Nurse RN 24, reflects that the surgery was conducted between 09:22 and 13:28; that Dr. Barranco was present between 08:18 and 13:39; and, that Dignity Health Resident 6 was also present between 08:18 and 13:39.

(b)    Patient 53, a private insurance beneficiary, underwent a cervical discectomy, requiring the physician to make an incision in Patient 53's back, dissect down to Patient 53's spine, cut through Patient 53's vertebrae, and use a microscope to carefully drill off portions of Patient 53's vertebrae with Patient 53's spine exposed. Dignity Health's Perioperative Record for Patient 53, prepared by Dignity Health's Registered Nurse RN 25, reflects that the surgery was conducted between 09:29 and 11:57; that Dr. Barranco was present between 08:28 and 12:07; and, that Dignity Health Resident 8 was also present between 08:28 and 12:07.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Barranco's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Barranco was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Barranco failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 52, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    The wrongful surgeries could not have been performed by Dr. Barranco and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Barranco with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Barranco would be involved in two concurrent surgeries, that Dr. Barranco would not be present

111

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Barranco would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Barranco, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(g)  By making multiple operating rooms available to Dr. Barranco for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(h)  Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 52. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied  with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(ix)  **Examples of Dr. Kaibara's Role in the Fraud (Double Concurrencies).**

182.  On August 20, 2013, Dr. Kaibara performed two concurrent surgeries in violation of Medicare rules and regulations.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(a)    Patient 54, a Medicaid beneficiary, underwent a laminectomy, requiring the physician to cut open Patient 54's vertebrae to expose Patient 54's spine and carefully drill out portions of Patient 54's bone to relieve pressure. Dignity Health's Perioperative Record for Patient 54, prepared by Dignity Health's Registered Nurse RN 13, reflects that the surgery was conducted between 14:06 and 17:01; that Dr. Kaibara was present between 12:44 to 17:13; and, that Dignity Health Resident 11 was also present between 12:44 to 17:13.

(b)    Patient 55, a state workers' compensation beneficiary, underwent a lumbar fusion, requiring the physician to dissect deep through Patient 55's back and drill into Patient 55's vertebrae to carefully decompress Patient 55's spinal nerves. Dignity Health's Perioperative Record for Patient 55, prepared by Dignity Health's Registered Nurse RN 26, reflects that the surgery was conducted between 15:34 and 19:28; that Dr. Kaibara was present between 14:30 and 19:32; and, that Dignity Health Resident 8 was also present between 14:30 and 19:32.

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Kaibara's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Kaibara was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 §

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Kaibara failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 54, a knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    Dr. Kaibara also failed to personally document his presence during the critical or key portions of the surgery of Patient 54. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Kaibara and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Kaibara with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Kaibara would be involved in two concurrent surgeries, that Dr. Kaibara would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Kaibara would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Kaibara, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint). In addition, because Patient 54 was a Medicaid beneficiary, Dignity Health, BNA, and Dr. Kaibara were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(h)     By making multiple operating rooms available to Dr. Kaibara for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)     Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicaid for the surgery and related hospitalization of Patient 54. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied  with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(x)     **Examples of Dr. Nakaji's Role in the Fraud (Double Concurrencies).**

183.    On September 30, 2013, Dr. Nakaji performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)     Patient 56, a Medicaid and AHCCCS beneficiary, underwent a craniotomy, requiring the physician to open Patient 56's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 56's brain, and locate and cut out portions of Patient 56's tumor. Dignity Health's Perioperative Record for Patient 56, prepared by Dignity Health's Registered Nurse RN 27 reflects that the surgery was conducted between 14:49 and 16:53; that Dr. Nakaji was present between 13:34 and 17:07; and, that Dignity Health Resident 19 was also present between 13:34 and 17:07.

115

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(b)    Patient 57, a private insurance beneficiary, underwent a craniotomy to decompress a nerve, requiring the physician to open Patient 57's back and skull, split Patient 57's muscles, use a microscope and wand navigation to locate a compressed nerve in Patient 57's brain, and carefully separate several vessels from the nerve to relieve pressure. Dignity Health's Perioperative Record for Patient 57, prepared by Dignity Health's Registered Nurse RN 12, reflects that the surgery was conducted between 15:18 and 17:15; that Dr. Nakaji was present between 14:08 and 17:21; and, that Dignity Health Resident 8 was also present between 14:08 and 17:21.

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Nakaji's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Nakaji was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Despite the concurrent surgeries, Dr. Nakaji failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 56, a

116

knowing violation of Medicare rules. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)    Dr. Nakaji also failed to personally document his presence during the critical or key portions of the surgery of Patient 56. This failure independently rendered this concurrent/overlapping surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)    The wrongful surgeries could not have been performed by Dr. Nakaji and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Nakaji with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Nakaji would be involved in two concurrent surgeries, that Dr. Nakaji would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Nakaji would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Nakaji, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint). In addition, because Patient 56 was a Medicaid beneficiary, Dignity Health, BNA, and Dr. Nakaji were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

(h)    By making multiple operating rooms available to Dr. Nakaji for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2)) and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed AHCCCS for the surgery and related hospitalization of Patient 56. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete." In addition, because Patient 56 was an AHCCCS beneficiary, Dignity Health, BNA, and Dr. Nakaji were duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS, but failed to do so, thus enabling the practice of improper multiple concurrent surgeries to continue.

(xi)    **Examples of Dr. Spetzler's Role in the Fraud (Double Concurrencies).**

**184.**    On September 30, 2013, Dr. Spetzler performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 58, a Medicare beneficiary, underwent a craniotomy to remove a cyst, requiring the physician to open Patient 58's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 58's brain, and locate and cut out portions of a cyst in Patient 58's brain. Dignity Health's Perioperative Record for Patient 58, prepared by Dignity Health's Registered Nurse RN 7, reflects that the surgery was conducted between 09:54 and 11:12; that Dr. Spetzler was present between 07:27 and 11:28; and, that Dignity Health Resident 17 was present between 09:04 and 11:28.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

118

(b)    Patient 59, a private insurance beneficiary, underwent a craniotomy to remove a tumor, requiring the physician to open Patient 59's skull with a high-speed drill, use a microscope to carefully dissect deep into Patient 59's brain, and locate and cut out portions of Patient 59's tumor. Dignity Health's Perioperative Record for Patient 59, prepared by Dignity Health's Registered Nurse RN 24, reflects that the surgery was conducted between 08:33 and 13:22; that Dr. Spetzler was present between 07:28 and 13:29; and, that Dignity Health Resident 1 was also present between 07:28 and 13:29.

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Spetzler's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure." 42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)    These Dignity Health Perioperative Records demonstrate that Dr. Spetzler was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)    Dr. Spetzler also failed to personally document his presence during the critical or key portions of the surgery of Patient 58. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(f)    The wrongful surgeries could not have been performed by Dr. Spetzler and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Spetzler with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr. Spetzler would be involved in two concurrent surgeries, that Dr. Spetzler would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Spetzler would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Spetzler, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this Amended Complaint).

(g)    By making multiple operating rooms available to Dr. Spetzler for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))   and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51)

(h)    Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 58. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any

120

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(xii)    **Examples of Dr. Dickman's Role in the Fraud (Double Concurrencies).**

**185.**    On April 2, 2014, Dr. Dickman performed two concurrent surgeries in violation of Medicare rules and regulations.

(a)    Patient 67, a Medicare beneficiary, underwent a thoracic corpectomy with fusion, requiring a surgeon to make an incision in Patient 67's thorax, dissect down to Patient 67's spine, cut through Patient 67's vertebrae, and use a microscope to carefully drill off portions of vertebrae with Patient 67's spine exposed. Dignity Health's Perioperative Record for Patient 67, prepared by Dignity Health's Registered Nurse RN 6, reflects that the surgery was conducted between 09:01 and 11:50; that Dr. Dickman was present between 09:43 and 11:57; and, that Dignity Health Resident 1 was also present between 09:43 and 11:57.

(b)    Patient 68, a private insurance beneficiary, underwent a lumbar microdiscectomy, requiring a surgeon to make an incision in Patient 68's back, dissect down to Patient 68's spine, cut through Patient 68's vertebrae, and use a microscope to carefully drill off portions of vertebrae and remove a disc. Dignity Health's Perioperative Record for Patient 68, prepared by Dignity Health's Registered Nurse RN 11 reflects that the surgery was conducted between 11:06 and 12:37; that Dr. Dickman was present between 10:31 and 12:42; and, that Dignity Health Resident 27 was also present between 10:31 and 12:42.

(c)    The Dignity Health Perioperative Records for the above Patients, prepared by Dignity Health nurses, conflictingly and falsely report Dr. Dickman's presence in two different locations at the same time–a physical impossibility and a violation of the teaching surgeon's obligation to be "immediately available to furnish services during the entire service or procedure."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

42 C.F.R. § 415.172(a). Such false statements by Dignity Health–unrebutted by the BNA teaching surgeons–enable Defendants' fraudulent scheme to escape detection unless multiple records are compared against each other, as the above analysis demonstrates. The preparation and submission of such false medical records violates the documentation obligations of 42 C.F.R. § 415.172(b), which require the medical records to "document the teaching physician was present at the time the service is furnished."

(d)     These Dignity Health Perioperative Records demonstrate that Dr. Dickman was engaged in two concurrent surgeries, thus requiring full compliance with MCPM Ch. 12 § 100.1.2(A)(2).

(e)     Despite the concurrent surgeries, Dr. Dickman failed to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery of Patient 67, a knowing violation of Medicare rules. This failure independently rendered the concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(f)     Dr. Dickman also failed to truthfully and personally document his presence during the critical or key portions of the surgery of Patient 67.  Rather, he personally documented as if he were present during the entire time of Patient 67's surgery, which he obviously was not. This failure independently rendered this concurrent surgery non-reimbursable under MCPM Ch. 12 § 100.1.2(A)(2).

(g)     The wrongful surgeries could not have been performed by Dr. Dickman and billed to the United States without the active assistance and knowingly wrongful involvement of Dignity Health. Dignity Health enabled the concurrent surgeries to proceed by (i) providing Dr. Dickman with access to two ORs simultaneously, each of which was staffed with Dignity Health employees, including nurses who falsified medical records, as described above, and (ii) obtaining each patient's consent to the described surgeries by fraudulently failing to disclose that Dr.

122

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Dickman would be involved in two concurrent surgeries, that Dr. Dickman would not be present throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that Dr. Dickman would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Dickman, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this Amended Complaint).

(h)     By making multiple operating rooms available to Dr. Dickman for the surgical procedures described in this example, and by not requiring a backup surgeon to be available, Dignity Health knowingly compromised the health of its patients in violation of its obligations to provide patient care in "a safe setting" (42 C.F.R. § 482.13(c)(2))  and "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51).

(i)     Upon information and belief and consistent with Defendants' patterns and practices, BNA and Dignity Health billed Medicare for the surgery and related hospitalization of Patient 67. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of these submissions, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

C.     **Representative Examples of the Fraud Involving Failure of Teaching Physician to be Physically Present During Angiographies**

**186.**     The following examples involving angiographies illustrate the fraud described in paras. 114-122, which are incorporated herein by reference. In each example, Defendants submitted

123

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

their false claims, supported by the described false statements and fraudulent omissions, with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false. And in most, if not all, of the examples, Defendants obtained the patient's consent to the surgery through the false and misleading consent forms described in paras. 123-132.

(i)    **Examples of Dr. Albuquerque's Role in the Fraud (Angiographies).**

187.    On September 10, 2014, Dr. Albuquerque purported to be the teaching physician overseeing a complex interventional radiological angiography for Patient 60, an AHCCCS beneficiary. Patient 60 arrived at Dignity Health after two weeks of suffering headaches, and was neurologically intact and able to walk and talk. Patient 60 had suffered from a delayed neurological injury after a previous angiography at BNA and Dignity Health and arrived comatose to the angiography at issue, for which Dr. Albuquerque was responsible. The angiography at issue, Patient 60's second angiography at BNA and Dignity Health, required the physician to use ultrasound imaging to carefully insert a needle into a major artery through Patient 60's groin and inject dye into Patient 60's brain to diagnose potential abnormalities and determine blockages. According to the nurse's record and the Anesthesiology Record, the surgery was conducted between 08:50 and 12:03 with Dignity Health Resident 8. Dr. Kingsley was present, and consistent with all of his observations of Dr. Albuquerque's complex interventional radiologic angiographies involving residents, observed that Dignity Health Resident 8 performed substantial portions, including the diagnostic portion, of the procedure outside the presence of Dr. Albuquerque. Dr. Albuquerque arrived at Patient 60's procedure only after Dignity Health Resident 8 telephoned to inform him of the results of the diagnostic procedure. Only then did Dr. Albuquerque come to the angiography suite to supervise and participate in Patient 60's treatment. Patient 60 died two days after this procedure and was referred to organ donation.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(a)    Dr. Albuquerque's failure to be present during the entirety of the angiography rendered the procedure and associated hospitalization non-billable under MCPM Ch. 12 § 100.1.5 and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(b)    Dignity Health obtained the patient's consent to the described procedure by knowingly and fraudulently failing to disclose that Dr. Albuquerque would not be present throughout the entirety of the patient's procedure, and that an unsupervised resident would perform portions of the patient's procedure, while fraudulently informing the patient that Dr. Albuquerque would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Albuquerque, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(c)    Upon information and belief and consistent with Defendants' patterns and practices, BNA, in violation of MCPM Ch. 12 § 100.1.5, and Dignity Health billed Medicaid for the entirety of Patient 60's angiography, even though Dr. Albuquerque was not present for the entire procedure. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(ii)    **Examples of Dr. Albuquerque's Additional Role in the Fraud (Angiographies).**

188.    On March 3, 2014, Dr. Albuquerque purported to be the teaching physician

125

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

overseeing a complex interventional radiological angiography for Patient 61, a Medicaid beneficiary. This required the physician to use ultrasound imaging to carefully insert a needle into a major artery through Patient 61's groin and inject dye into Patient 61's brain to diagnose potential abnormalities. According to the nurse's record and the Anesthesiology Record, the surgery was conducted between 10:34 and 11:01 by Dignity Health Resident 25. On information and belief, Dr. Albuquerque was not present during major portions of the angiography. Dr. Albuquerque was not present during any portion of this procedure until 10:54 when he arrived for the first time. His participation in this procedure consisted solely of viewing the radiographic result.

(a)    Dr. Albuquerque's failure to be present during the entirety of the angiography rendered the procedure and associated hospitalization non-billable under MCPM Ch. 12 § 100.1.5 and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(b)    Dignity Health obtained the patient's consent to the described procedure by knowingly and fraudulently failing to disclose that Dr. Albuquerque would not be present throughout the entirety of the patient's procedure, and that an unsupervised resident would perform the entire procedure, while fraudulently informing the patient that Dr. Albuquerque would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. Albuquerque, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(c)    Upon information and belief and consistent with Defendants' patterns and practices, BNA, in violation of MCPM Ch. 12 § 100.1.5, and Dignity Health billed Medicaid for the entirety of Patient 61's angiography, even though Dr. Albuquerque was not present for the entire procedure. BNA and Dignity Health submitted their bills, knowing that the procedure was

126

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

(iii)    **Examples of Dr. McDougall's Role in the Fraud (Angiographies).**

**189.**    On December 3, 2013, Dr. McDougall purported to be the teaching physician overseeing a complex interventional radiological angiography for Patient 62, a Medicare beneficiary. This required the physician to use ultrasound imaging to carefully insert a needle into a major artery through Patient 62's groin and inject dye into Patient 62's brain to diagnose potential abnormalities and determine blockages. According to the nurse's record and the Anesthesiology Record, the surgery was conducted between 15:31 and 17:45 with Dignity Health Resident 25. Dr. Kingsley was present and observed that Dr. McDougall was not present during the entirety of the diagnostic portion of the procedure. Dr. McDougall arrived at 16:13 and participated in a subsequent endovascular treatment of an aneurysm.

(a)    Dr. McDougall's failure to be present during the entirety of the angiography rendered the procedure and associated hospitalization non-billable under MCPM Ch. 12 § 100.1.5 and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(b)    Dignity Health obtained the patient's consent to the described procedure by knowingly and fraudulently failing to disclose that Dr. McDougall would not be present throughout the entirety of the patient's procedure, and that an unsupervised resident would perform portions of the patient's procedure, while fraudulently informing the patient that Dr. McDougall

127

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. McDougall, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(c)    Upon information and belief and consistent with Defendants' patterns and practices, BNA, in violation of MCPM Ch. 12 § 100.1.5, and Dignity Health billed Medicare for the entirety of Patient 62's angiography, even though Dr. Albuquerque was not present for the entire procedure. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with "all Medicare laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

### (iv)    Examples of Dr. McDougall's Additional Role in the Fraud (Angiographies).

190.    On October 21, 2015, Dr. McDougall purported to be the teaching physician overseeing a complex interventional radiological angiography for Patient 63, an ACHCCS beneficiary. This required the physician to use ultrasound imaging to carefully insert a needle into a major artery through Patient 63's groin and inject dye into Patient 63's brain to diagnose potential abnormalities and determine blockages. According to the nurse's record and the Anesthesiology Record, the surgery was conducted between 12:03 and 13:38 with Dignity Health Resident 28. Dr. Kingsley was present and observed that Dr. McDougall was not present during the entirety of the procedure.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(a)    Dr. McDougall's failure to be present during the entirety of the angiography rendered the procedure and associated hospitalization non-billable under MCPM Ch. 12 § 100.1.5 and CMS State Operations Manual - Appendix A, Interpretive Guidelines § 482.51(b)(2) and 42 C.F.R. § 482.13(b)(2).

(b)    Dignity Health obtained the patient's consent to the described procedure by knowingly and fraudulently failing to disclose that Dr. McDougall would not be present throughout the entirety of the patient's procedure, and that an unsupervised resident would perform portions of the patient's procedure, while fraudulently informing the patient that Dr. McDougall would be present to provide "guidance and/or supervision" to residents assigned to assist Dr. McDougall, all in violation of informed consent regulations, including those contained in 42 C.F.R. §§ 482.13(b)(2), 482.24(c)(4)(v), and 482.51(b)(2) (more particularly described in paras. 42-43 of this First Amended Complaint).

(c)    Upon information and belief and consistent with Defendants' patterns and practices, BNA, in violation of MCPM Ch. 12 § 100.1.5, and Dignity Health billed Medicare for the entirety of Patient 63's angiography, even though Dr. McDougall was not present for the entire procedure. BNA and Dignity Health submitted their bills, knowing that the procedure was performed in violation of each of the rules and regulations described in this example and that their submissions failed to include sufficient information to determine whether payment was due in violation of 42 C.F.R. § 424.5, and, therefore, were not properly billed to, or payable by, any government program. As part of this submission, BNA and Dignity Health falsely certified that they complied with all Medicare "laws, regulations and program instructions" and that their submissions were "true, accurate and complete."

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

## VIII.   PERVASIVENESS AND CONSEQUENCES OF THE FRAUDULENT SCHEME

191.    The above examples demonstrate a pervasive scheme of fraudulent billing that BNA and Dignity Health engaged in for years. The examples are not intended to be all-inclusive of (i) the number of improper procedures performed on a daily basis, (ii) the BNA teaching surgeons who performed them, or (iii) the means by which the Defendants used SJHMC residents or permitted SJHMC to be used in violation of rules and regulations governing payment of claims under Government Health Care Programs. Upon information and belief, there are many additional instances of improper surgeries performed, and which continue to be performed on a daily basis, at SJHMC by BNA surgeons, including, but not limited to, the Defendant Doctors, that are not included in the examples. Records confirming additional improper procedures and the BNA surgeons who performed them are in the exclusive possession and control of the Defendants.

192.    Defendants continue to obtain patient consent to surgical procedures by requiring patients to sign consent forms that fail to disclose that portions of operations will be performed by unsupervised residents and that the primary surgeon will not be present during the entire procedure, while falsely assuring the patient that the primary surgeon will be present to provide "guidance and/or supervision" to residents assigned to assist the primary surgeon. Through Defendants' fraudulent billing scheme, both BNA and Dignity Health have improperly billed and collected millions of dollars in federal funds.

## IX.    CAUSES OF ACTION

## COUNT I

**(Federal False Claims Act – Presentation of False Claims – 31 U.S.C. § 3729(a)(1)(A) – Against All Defendants)**

193.    Dr. Kingsley re-alleges and incorporates by reference all allegations contained in paras. 1 through 192 of this Complaint.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**194.** On information and belief, Defendants knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval by the United States – including the false and fraudulent claims for payments from Medicare, Medicaid, and other Government Health Care Programs included in paras. 160-190 of this First Amended Complaint (the "Examples") in violation of 31 U.S.C. § 3729(a)(1)(A).

**195.** As more particularly illustrated in the Examples, which are specifically incorporated herein by reference, BNA, through its employees, including the teaching surgeons referred to in the Examples, engaged in fraudulent practices to induce the United States to make payments under Government Health Care Programs, including without limitation, Medicare and Medicaid. Those fraudulent practices, which occurred on the dates set forth in the Examples, include:

(a)     Performing two, three and even more concurrent surgeries in the circumstances described in the Examples and then submitting claims to the United States for payment, in violation of the cited regulations;

(b)     Falsely documenting that the teaching surgeon was present when services were furnished, in violation of 42 C.F.R. § 415.172(b);

(c)     The failure of the teaching physician to be immediately available to furnish services during the entire service or procedure, in violation of 42 C.F.R. § 415.172(b);

(d)     Omitting to arrange for a backup surgeon to be available to immediately assist the Resident performing the surgery in circumstances in which a backup surgeon was required and then submitting claims to the United States for payment, in violation of the cited regulations;

(e)     Failing to personally document the teaching surgeon's presence during the critical or key portions of the surgeries and then submitting claims to the United States for payment, in violation of the cited regulations;

131

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

(f)    The failure of the teaching surgeon to be physically present during angiographies and then submitting claims to the United States for payment, in violation of the cited regulations;

(g)    Contrary to the fraudulent practices described in sub-paras. (a) - (f) of this paragraph, falsely certifying compliance with all applicable Medicare regulations and submitting claims for payment, specifically including claims submitted in connection with the Examples.

196.    As more particularly illustrated in the Examples, which are specifically incorporated herein by reference, Dignity Health, through its employees, including the nurses referred to in the Examples, engaged in fraudulent practices to induce the United States to make payments under Government Health Care Programs, including without limitation, Medicare and Medicaid. Those fraudulent practices, which occurred on the dates set forth in the Examples, include:

(a)    Providing teaching surgeons with access to multiple ORs at the same time, knowing that the teaching surgeons would be performing concurrent surgeries in violation of the regulations cited in the Examples and staffing the multiple ORs with Dignity Health employees, including nurses who then falsified medical records to make it appear that teaching surgeons were present throughout each of multiple concurrent surgeries;

(b)    Providing teaching surgeons with access to ORs for the purpose of performing angiographies without requiring the teaching surgeon to be present throughout the procedures, and staffing the ORs in which the angiographies were being performed with Dignity Health employees, including nurses who then falsified medical records to make it appear that teaching surgeons were present throughout each such procedure;

(c)    Obtaining patient consent to the surgeries referred to in the Examples by fraudulently failing to disclose that the teaching surgeon identified in the consent form would be involved in multiple overlapping surgeries, that the teaching surgeon would not be present

132

throughout the entirety of the patient's procedure, and that unsupervised residents would perform portions of the patient's surgery, while fraudulently informing each patient that the designated teaching surgeon would be present to provide "guidance and/or supervision" to residents assigned to assist the designated teaching surgeon; without the patient's fraudulently obtained consent, the surgeries would not have proceeded;

(d)     Violating patients' "right to receive care in a safe setting" (42 C.F.R. § 482.13(c)(2)) by providing the facilities and personnel to permit two, three, and even more surgeries to proceed simultaneously;

(e)     Failing to provide surgical services "in accordance with acceptable standards of practice" (42 C.F.R. § 482.51) by providing the facilities and personnel to permit two, three, and even more surgeries to proceed simultaneously;

(f)     Certifying on claim forms submitted to the United States that a specific teaching surgeon was "the individual with primary responsibility for performing [the surgery]" pursuant to Chapter 25 of the MCPM, when the hospital had actual knowledge that the conduct of its employee residents and medical staff member and teaching neurosurgeon violated Chapter 12 of the MCPM;

(g)     Contrary to the fraudulent practices described in sub-paras. (a) - (f) of this paragraph, falsely certifying compliance with all applicable Medicare regulations and submitting claims for payment, specifically including claims submitted in connection with the Examples.

197.     In violation of the certification of compliance included in the MCR, Dignity Health submitted annual MCRs for each year between at least 2011 and 2017 without disclosing the above regulatory and rules violations in MCRs it submitted, making it ineligible to receive GME payments and making each MCR false. As a result, all payments to Dignity Health that were made during each annual reporting period are deemed overpayments.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**198.**    All of the above false and fraudulent claims were presented with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false. Each such claim was based on materially false representations, as described above, which were intended to induce, and did induce, the United States Government to pay the claims.

**199.**    The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Defendants for these false and fraudulent claims had it known the falsity of said claims by Defendants.

**200.**    As a direct and proximate result of the false and fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA in an amount to be determined at trial, plus a civil penalty in the range of amounts specified in  31 U.S. Code § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (as amended), for each violation of the FCA, plus 3 times the amount of damages which the Government has sustained as a result of the Defendants' wrongful conduct.

## <u>COUNT II</u>

**(Federal False Claims Act – Making or Using False Record or Statement to Cause Claim to Be Paid – 31 U.S.C. § 3729(a)(1)(B) – Against All Defendants)**

**201.**    Dr. Kingsley re-alleges and incorporates by reference all allegations contained in paras. 1 – 192 and 194 - 199 of this First Amended Complaint.

**202.**    Defendants knowingly made, used or caused to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

**203.**    Defendants' knowingly false records or false statements were material, and continue to be material, to the false and fraudulent claims for payments Defendants made to the United States for payments from Medicare, Medicaid and other federally funded healthcare programs.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

**204.**    Defendants' materially false records and false statements are set forth in the Examples, and elsewhere in this Complaint, and include, but are not limited to (i) false claims and bills for payment that certified compliance with all Medicare laws, regulations and program instructions, including representations that the procedures billed to the Federal Government were conducted in compliance with the rules and regulations set forth in the MCPM and C.F.R., and (ii) medical records that fraudulently represented the teaching surgeon's presence in multiple ORs simultaneously. In addition, Dignity Health's violations of the MCPM and C.F.R., rendered each MCR submitted by Dignity Health between at least 2011 and 2017 materially false.

**205.**    These said false records or false statements were made, used or caused to made or used, with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

**206.**    As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by Defendants, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA in an amount to be determined at trial, plus a civil penalty in the range of amounts specified in  31 U.S. Code § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (as amended), for each violation of the FCA, plus 3 times the amount of damages which the Government has sustained as a result of the Defendants' wrongful conduct.

## COUNT III

### (Conspiracy to Violate Federal False Claims Act – 31 U.S.C. § 3729(a)(1)(C) – Against All Defendants)

**207.**    Dr. Kingsley re-alleges and incorporates by reference as though fully set forth herein all allegations contained in paras. 1 through 192, 194 – 199, and 202 - 205 of this First Amended Complaint.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

208.    Through acts including those described in the Examples, which are specifically incorporated herein by reference, and elsewhere in this First Amended Complaint, each of the Defendants knowingly conspired and agreed with one another to defraud the United States and state Medicaid programs by submitting or causing to be submitted false and fraudulent claims for payment or approval and making or using false records or statements to cause those claims to be paid.

209.    Defendants, their agents, and their employees worked collaboratively to further the conspiracy by, *inter alia*, preparing false records, retroactively modifying records to maximize government reimbursement despite ineligibility, submitting claims for reimbursement to the Government, and instructing their personnel to conceal and to avoid disclosing evidence of the fraudulent scheme.

210.    In particular, and as set forth in the Examples, BNA presented numerous claims for reimbursement for the services of its surgeons that violated C.F.R. and MCPM Teaching Surgeon rules and regulations cited above while falsely certifying compliance with all applicable rules and regulations, making the claims false.

211.    In particular, and as set forth in the Examples, Dignity Health knowingly furthered Defendants' fraudulent scheme by (i) scheduling concurrent surgeries through a system of "block scheduling" which routinely reserved multiple ORs for a single BNA surgeon at one time, (ii) providing the same BNA physician with simultaneous access to multiple ORs, thus enabling concurrent surgeries to proceed in violation of those provisions of the C.F.R and MCPM cited throughout this First Amended Complaint, (iii) obtaining patient consents to surgical procedures through a false consent form (as described above), (iv) assigning to BNA surgical procedures employees, including nurses who, with the Hospital's knowledge, consent, and instruction, falsified medical records for the fraudulently-billed surgeries of BNA, and (v) through its QA Department

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

employees, manipulating Dignity Health's QA system to retroactively augment surgical records to create an appearance of eligibility for reimbursement by the Government. These Dignity Health employees willfully assisted in the falsification of operating room records on behalf of Dignity Health, which allowed Defendants' fraudulent scheme to continue undetected. In addition, by submitting claims for payment to the United States, Dignity Health falsely certified its compliance with all applicable regulations, despite its failure to comply with those conditions of participation cited above.

212.    Dignity Health knew that BNA surgeons were performing multiple improper concurrent surgeries, specifically including those set forth in the Examples, because it was making available and staffing with nurses and residents the very operating rooms in which BNA surgeons were performing the concurrent surgeries. By reason of this knowledge, Dignity Health was duty-bound under 36 ARS § 2918.01 to report the improper multiple concurrent surgeries to the Director of AHCCCS. Moreover, Dignity Health was obligated by the CIA to notify the Office of Inspector General of any "matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized." By failing to report BNA's improper conduct, as set forth in the Examples, to either the Director of AHCCCS or to the OIG, Dignity Health enabled and furthered the Defendants' fraudulent scheme and assured that the pervasive practice of multiple unlawful concurrent surgeries would continue undetected.

213.    Each Defendant:

(a)    was a knowing party to, or knowingly acquiesced in, the conspiracy;

(b)    actively took steps in furtherance of the conspiracy with a common goal of obtaining money from the Government through false claims or certifications of compliance with federal healthcare laws;

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

(c)    aided, supported or encouraged the conspiracy;

(d)    ratified acts of the conspiracy;

(e)    actively concealed the unlawful purpose of the conspiracy; and,

(f)    adopted acts done for the benefit of themselves individually or jointly.

214.    By reason of the conspiratorial acts of Defendants, the United States has paid these false or fraudulent claims, not knowing the falsity of their claims and certifications. As a result the Federal Government has been damaged in an amount to be determined at trial.

215.    By reason of the conspiratorial acts of Defendants, they are each jointly and severally liable for civil damages, monetary penalties and treble damages under the FCA.

## AD DAMNUM

WHEREFORE, Relator respectfully requests that judgment be entered in his favor against Defendants BNA and Dignity Health, jointly and severally, for:

(a)    Three times the amount of the actual damages that the Government sustains as a result of the Defendants' wrongful conduct;

(b)    A civil penalty in the range of amounts specified in  31 U.S. Code § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (as amended), for each violation of the FCA;

(c)    The maximum share permitted to be awarded to a qui tam plaintiff under 31 U.S.C. § 3730(d);

(d)    Reasonable attorneys' fees and costs;

(e)    Interest on all sums awarded to Relator;

(f)    Such other relief as the Court deems appropriate.

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

138

Respectfully submitted this ___ day of June 2018.

**LAW OFFICES OF THOMAS J. MARLOWE**
THOMAS J. MARLOWE

By: _____
THOMAS J. MARLOWE
(AZ Bar No. 016640)
2425 East Camelback Road, Suite 880
Phoenix, AZ 85016
Telephone:      +1 602 957 1995
Facsimile:      +1 602 957 2137
tmarlowe2425@outlook.com

**LAW OFFICES OF THOMAS M. CONNELLY**
THOMAS M. CONNELLY
(AZ Bar No. 012987)
2425 East Camelback Road, Suite 880
Phoenix, AZ 85016
Telephone:      +1 602 957 1993
Facsimile:      +1 602 957 2137
Tconnelly2425@aol.com

**McGINNITY LAW, PLC**
SETH P. MCGINNITY
(AZ Bar No. 030343)
2425 East Camelback Road, Suite 880
Phoenix, AZ 85016
Telephone:      +1 480 659 8818
Facsimile:      +1 480 659 8223
seth@mcginnitylaw.com

**BAKER & McKENZIE LLP**
COLIN H. MURRAY
*(Admitted Pro Hac Vice)*
DAVID R. CALLAWAY
*Admitted Pro Hac Vice)*
ANNE M. KELTS
*(Admitted Pro Hac Vice)*
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
Telephone:      +1 415 576 3000
Facsimile:      +1 415 576 3099
colin.murray@bakermckenzie.com
david.callaway@bakermckenzie.com
anne.kelts@bakermckenzie.com

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

139

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BAKER & McKENZIE LLP**
MARK L. KARASIK
*(Admitted Pro Hac)*
JAMES J. DRIES
*(Admitted Pro Hac Vice)*
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone:      +1 312 861 8000
Facsimile:      +1 312 861 2899
mark.karasik@bakermckenzie.com
james.dries@bakermckenzie.com

*Attorneys For Plaintiff-Relator Bruce P. Kingsley, M.D.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA 94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Respectfully submitted this _12th_ day of June 2018.

LAW OFFICES OF THOMAS J. MARLOWE
THOMAS J. MARLOWE

By:

THOMAS J. MARLOWE
(AZ Bar No. 016640)
2425 East Camelback Road, Suite 880
Phoenix, AZ  85016
Telephone:    +1 602 957 1995
Facsimile:    +1 602 957 2137
tmarlowe2425@outlook.com

LAW OFFICES OF THOMAS M. CONNELLY
THOMAS M. CONNELLY
(AZ Bar No. 012987)
2425 East Camelback Road, Suite 880
Phoenix, AZ  85016
Telephone:    +1 602 957 1993
Facsimile:    +1 602 957 2137
Tconnelly2425@aol.com

McGINNITY LAW, PLC
SETH P. MCGINNITY
(AZ Bar No. 030343)
2425 East Camelback Road, Suite 880
Phoenix, AZ  85016
Telephone:    +1 480 659 8818
Facsimile:    +1 480 659 8223
seth@mcginnitylaw.com

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

141

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BAKER & McKENZIE LLP**
COLIN H. MURRAY
*(Admitted Pro Hac Vice)*
DAVID R. CALLAWAY
*(Admitted Pro Hac Vice)*
ANNE M. KELTS
*(Admitted Pro Hac Vice)*
Two Embarcadero Center, 11th Floor
San Francisco, CA  94111
Telephone:     +1 415 576 3000
Facsimile:     +1 415 576 3099
colin.murray@bakermckenzie.com
david.callaway@bakermckenzie.com
anne.kelts@bakermckenzie.com

**BAKER & McKENZIE LLP**
MARK L. KARASIK
*(Admitted Pro Hac Vice-Application )*
JAMES J. DRIES
 *(Admitted Pro Hac Vice)*
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Telephone:     +1 312 861 8000
Facsimile:     +1 312 861 2899
mark.karasik@bakermckenzie.com
james.dries@bakermckenzie.com

*Attorneys For Plaintiff-Relator Bruce P. Kingsley, M.D.*

Baker & McKenzie LLP
Two Embarcadero Center
11th Floor
San Francisco, CA  94111
+1 415 576 3000

Case No. CV-17-00692-PHX-JZB
FIRST AMENDED COMPLAINT;
DEMAND FOR JURY TRIAL